**In the Matter of Wilbur J. ROBERTS, JR., a/k/a J.R. Roberts, d/b/a Farming, Debtor.**

**Wilbur J. ROBERTS, Movant,**

**v.**

**JOHN DEERE COMPANY, Respondent.**

**Bankruptcy No. 83–02312–SJ.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

April 23, 1984.

---

Mark G. Stingley, Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, Mo., for debtor.

Thomas C. Capps, Law Offices of Timothy H. Bosler, Liberty, Mo., for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER DENYING MOTION FOR LIEN AVOIDANCE

DENNIS J. STEWART, Bankruptcy Judge.

In this case, the debtor seeks avoidance of liens on certain farm machinery which he characterizes as tools of his trade of a farmer and thus exempt to the extent of $4,000.00 under § 513.430(2) RSMo. He accordingly seeks to avoid under § 522(f)(2) of the Bankruptcy Code respondent John Deere's lien on so much of the value of these chattels as can be claimed as exempt. The respondent initially defended the motion for lien avoidance on the grounds that the security interest sought to be avoided was a purchase money security interest and thus, under the plain terms of § 522(f)(2), *supra*, not subject to avoidance. But the movant initially denied this allegation, thus seeming to the court to require a hearing of this matter.[1]

Accordingly, the court initially convened a hearing in the matter on January 20, 1984, in St. Joseph, Missouri. Counsel for the parties then appeared before the court and stated that the issue of the nonpurchase money character of the security interest was no longer before the court; that the issue to be resolved was that of the value of the chattels; and that they would propose to the court in writing a schedule for offering documentary evidence on this issue. Counsel, however, never made such a proposal, with the result that the court reset a hearing, by order entered on February 28, 1984, for March 9, 1984, in St. Joseph, Missouri.

Evidence was then adduced to the principal material effect that the debtor has some little equity currently in one of the chattels which is the subject of his motion;[2] that the debtor, however, made a substantial down payment at the time of their purchase, but otherwise the value for the remainder of the purchase price came from the respondent creditor; and that the chattels are tools of the debtor's trade within the meaning of the Missouri exemption statute.

It is the assertion of the movant, based upon these facts, that the respondent's security interest cannot be regarded as a purchase money security interest to the extent that he gave trade-in value to the respondent or made a down payment when the sale and credit transaction took place; that, accordingly, in the ratio that this equity interest bore to the total purchase price, the lien avoidance statute, § 522(f)(2), should be utilized to protect the same ratio of equity interest in the present value of the collateral; that, accordingly, inasmuch as the total down payment and trade in value given by the movant to respondent was 30% of the total purchase price, the respondent's security interest cannot be accorded effect as to more than the remaining 70% of the present value of the collateral; that any other rule would disproportionately place the risk of depreciation on the debtor; and that the issue thus presented

---

1. In paragraph 10 of its response to the motion for lien avoidance, the respondent stated with particularity that it "is the holder of a perfected purchase money security interest in the three (3) pieces of equipment involved, namely the J.D. 4020 tractor, the J.D. 4400 combine with platoform, and the J.D. 443 Cornhead."

2. This small equity exists according to the respondent's evidence, also.

is one of first impression which has not previously been decided by the court.

This court formerly, however, in the cases of *Miller v. Peoples Bank of Miller,* 8 B.R. 43 (Bkrtcy.W.D.Mo.1980), and *Matter of Drummond,* 17 B.R. 494 (Bkrtcy.E.D.Ark.1981), recognized the principle that lien avoidance should be coextensive with a debtor's equity interest (in the sense of the amount by which value of the collateral exceeds the balance due to the creditor). The reasoning of the court in so holding was based on the unequivocal letter of the Bankruptcy Code and its legislative history, which this court analyzed to the following effect:

> "[T]he precise letter of ... [§ 522(f)] makes [lien] avoidance dependent upon the property's being exempt under § 522(b). That section, in turn, at subsection (b)(1) thereof, provides for the exemption of 'property that is specified under subsection (d) of this section.' And, as applicable here, that section exempts only '[t]he debtor's interest' in the property there described.
>
> "The court is aware that the debtor in the action at bar is claiming his exemptions pursuant to the applicable state law, rather than the provisions of §§ 522(b) and (d)(1), *supra.* See § 522(b)(2)(A), which permits him to make this election. But the state exemptions have not previously been regarded as effective under the bankruptcy law except insofar as the debtor had an equity in the property. See *Karsznia v. Kelsey,* 262 S.W.2d 844, 845 (Mo.1953), in which it was held that, with respect to the Missouri homestead exemption, a debtor might claim only his equity as exempt. 'Defendants' land being subject to a deed of trust, they were entitled to a homestead exemption in what remained of the total value after deducting the indebtedness secured by the deed of trust.' Nor does this concept appear to have been at all changed by the provisions of the new Bankruptcy Code which conceive of the debtor's owning an equity in the property as the prerequisite to his having a *pro tanto* exemption in that

property. [It is to be noted that the letter of § 522(f) itself limits avoidance to an "interest of the debtor" in the property with respect to which the lien is avoided.] [The necessity for an equity interest as the precondition of lien avoidance] is made clear by the legislative history under § 722 of the Code, which section provides for a debtor's redemption of certain personal property subject to a lien 'by paying the holder the amount of the allowed secured claim of such holder that is secured by such lien.' That legislative history, as here pertinent, states as follows:

> 'The right to redeem extends to the whole of the property, not just the debtor's exempt interest in it. Thus, for example, if a debtor owned a $2,000 car, subject to a $1,200 lien, *the debtor could exempt his $800 interest in the car.* The debtor is permitted a $1,500 exemption in a car ... 11 U.S.C. § 522(d)(2). This section permits him to pay the holder of the lien $1,200 and redeem the entire car, not just the remaining $700 of his exemption.' (Emphasis added.)

> "This explicative material makes it clear that the debtor entitles himself to exemption from a lienholder's rights as a secured creditor ... only to the extent that he has paid for, and thus has an equity interest in, that property. Further this court has, sitting *en banc,* in its prior decision on the constitutionality of § 522(f), *supra,* intimated that any other interpretation of the section may run afoul of the Fifth Amendment's prohibition of the taking of property without just compensation. [*In re Baker,* 5 B.R. 397 (W.D.Mo.Bkrtcy.1980).] ..."

These principles appeared at the time to be at once consonant with the manifested Congressional intent, the general law of the States, and considerations of equity and fairness. The debtor's equity in the household goods or other chattels which constituted the collateral basis of a nonpurchase money security interest would thereby be preserved even after bankruptcy by means of *pro tanto* lien avoidance. This interpre-

tation would have prevented the placing of all the risk of depreciation on the debtor. Formerly, secured creditors, not bound by the claims of exemption made by a debtor against his trustee in bankruptcy,[3] might foreclose after bankruptcy and, by reason of interim depreciation or a low foreclosure price, wipe out the equity which had been established to exist as of the time of bankruptcy. But, under *pro tanto* lien avoidance, the equity claimed as exempt in bankruptcy proceedings would be preserved in any later foreclosure proceeding; whatever the foreclosure sale price, no proceeds could be paid over to the secured creditor until the equity interest of the debtor, as established in the bankruptcy proceedings, had been fully paid to that debtor. When it is settled that a debtor may claim only his equity as exempt in bankruptcy proceedings, as in state proceedings concerning exemptions,[4] this interpretation of the lien avoidance statute seemed fairly to fulfill its stated legislative purpose of making the debtor's exemptions meaningful. Further, it did so without unfairly depriving the secured creditor of any value which he may have in good faith extended to the debtor in reliance upon the security interest. And finally, this fair proportionment of rights and interests obviated the possibly yet substantial question of the lien avoidance statute's constitutionality in view of its otherwise effect in taking the property interest of one entity and summarily conferring it upon another.[5]

Nevertheless, the courts, in *In re Lovett*, 11 B.R. 123 (Bkrtcy.W.D.Mo.1981), and its progeny have clearly, uniformly and without dissent rejected any recognition of equity or other partial interests in collateral when the matter of lien avoidance is to be considered. In that case, it was held that the "interest" referred to in § 522(f)(2) was not equivalent to or inclusive of "equity" and that, accordingly, so long as a debtor had possession of a liened article, he might avoid the lien on it, not *pro tanto*, but wholly.[6] Thus, any question of proportioning lien avoidance to consider the debtor's or creditor's partial interests seems once and for all time to have been laid to rest. And, accordingly, because of a suspicion that some lenders do not give full or substantial value in return for taking a security interest in household goods, tools of trade, and the like, the prevailing interpretation is that the lien avoidance statute should not restrict the creditor's security interest to his proportionate share according to the value actually given by him, but should rather, in each and every case, result in his forfeiture of that value into the hands of the debtor.[7]

The principle that, without regard to any equity, the lien should be wholly avoided has led the courts which have adopted it to apply a corollary which would appear to result in lien avoidance without any limitation as to the amount of value of collateral which may be the subject of such avoid-

3. It is ordinarily held that exemptions in bankruptcy are claimed only against the trustee in bankruptcy; that, otherwise, with respect to general creditors, the debtor is left to his claims of exemption which arise solely under state law. But one of the purposes of the lien avoidance statute was to make the claims of exemption in household goods, tools of the trade and certain other categories of personal property effective beyond the bankruptcy proceedings.

4. "Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the 'value' of the property for the purposes of exemption." S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

5. In upholding the constitutionality of such a "taking" of property rights, the decisions generally seem, in one way or another, to focus on

the usually small and inconsequential value of household goods, tools of the trade, and other like categories of personal property. But a constitutional matter is one of principle which ordinarily has no regard for the monetary value of the right involved. The decisions seem to ignore that the "taking" in these cases is that whereby one's property right is taken, not for a public purpose, but to give directly to another entity. One shudders to think what would become of the traditional American regard for private property rights if it were employed on any scale.

6. "While the equity is thus an 'interest', it is not necessarily the only interest of the debtor in the property." 11 B.R. at 125.

7. See note 5, *supra*.

ance. For, if lien avoidance is not restricted to the value of collateral which represents the equity of the debtor, by what principle may it be restricted? The answer interposed by this line of cases is "none." Accordingly, they interpret a statement in the legislative history of § 522(f)(2) which seems to restrict claimable exemptions to a debtor's equity interest and lien avoidance, in turn, to the extent of claimable exemptions to mean that a debtor may have lien avoidance without reference to any exemption limitation when the property on which he seeks lien avoidance is property in which he has no equity.[8] So interpreted, the lien avoidance statute would operate without even the amount limitations which state (or federal) exemption statutes contain with respect to several types of exemptable property.[9] And, if those statutory limitations are to be applied against the backdrop of otherwise unrestricted lien avoidance, the unfair and incongruous result is achieved whereby debtors with equity interests will be benefitted to a lesser extent than those without any equity interests.[10]

■■■ It is difficult, in analytical retrospect and in the light of such inequities and incongruities, to believe that the courts adhering to these principles intended to reject proportionate lien avoidance in all situations. But time and again, they have inveighed against the principle, denouncing by name and rank those who have seen fit to mention it in a favorable light.[11] Nor, in view of the blanket denunciation of the principle can it now be employed in respect of a purchase money security interest solely because such employment would favor the debtor instead of the secured creditor. The effectuation of such a philosophy, even in bankruptcy proceedings, could only be a stultification of the basic principle of American law that legal principles should not be utilized to favor or disfavor any particular persons or groups of persons. Further, in *Chambell v. Beneficial Finance Corp.*, 17 B.R. 597 (Bkrtcy.W.D.Mo.1982), this court attempted to apply the principle of proportion in respect to a purchase money security interest precisely on the basis which is now championed by the movant.[12] The district court expressly condemned the application of the concept for reasons which were left unstated, affirming this court's

---

**8.** See note 4, *supra.* That provision, in *In re Van Gorkom*, 4 B.R. 689, 691 (Bkrtcy.D.S.D. 1980), to mean that "(i)t was the intent of Congress to allow a debtor exemptions in the property up to certain amounts. Only the unencumbered portion of the property, in other words any equity the debtor might have in the property, is to be used for the purpose of determining when a debtor has *used up his exemptions. If a debtor claims an exemption in property in which he has no equity, there is no reduction in the amount of his exemptions.*" (Emphasis added.) Thus, by means of the artificial interpretation of "interest" without regard to "equity," a transformation in meaning of this passage from the legislative history results. Whereas the legislative history, as quoted in note 4, *supra*, limits the value of the exemption to the equity portion of it, the case authority holds that only that portion is to be counted in determining, not the extent of the exemption, but when the exemption has been "used up."

**9.** If a debtor has absolutely no equity in the property, under this reasoning, he can exempt the whole value. There is none which counts against his exemption. Thus regardless of the value of the property, the limitation imposed by the exemption statute can never be reached.

**10.** See note 9, *supra.* But if one, for instance, has an equity which equals or exceeds the exemption ceiling, he can exempt only that portion of it.

**11.** See, e.g., *Kursh v. Dial Finance Company of Missouri,* 9 B.R. 801 (Bkrtcy.W.D.Mo.1981); *In re Lovett,* 11 B.R. 123, 124, 125 (W.D.Mo.1981).

**12.** In that case, this court held that, because a later security arrangement was only a refinancing of an earlier one, the later agreement had the same character as the previous one and thus "related back" to the former one, *except to the extent* new money was advanced in connection with the later security arrangement. 17 B.R. at 599. But the district court impliedly disapproved this *pro tanto* characterization of the security interest and affirmed only on the ground that the later security agreement occurred before October 1, 1979, (in the "gap" period between November 6, 1978, and October 1, 1979) and was therefore unavoidable. In doing so, the district court ignored the appellate decisions on the issue of lien avoidance of a lien perfected during the "gap" period which were then in existence and which have uniformly been followed since that time. See *In re Webber,* 674 F.2d 796, 804 (9th Cir.1982) ("when

decision on wholly other grounds.[13] It therefore appears that if a security interest is to any extent a purchase money security interest within the meaning of § 522(f)(2), it is not subject to lien avoidance. Any apportionment of value must await the time of foreclosure.[14] For the foregoing reasons, this court issued its order on March 27, 1984, directing the parties to show cause within 15 days why lien avoidance should not be denied. Although more than 15 days have since passed, no response to that order has been filed.[15] Accordingly, it is hereby

ORDERED that the within motion for lien avoidance be, and it is hereby denied.

Credithrift made the loans in July, 1979, it should have been fully aware that the exemption provisions of § 522 would become effective on October 1, 1979, and that any bankruptcy filed subsequent to that date would result in avoidance of their liens on the exempt property."); Cf. *Chambell v. Beneficial Finance Co.,* Civil Action No. 82–5020–CV–SW–4 (W.D.Mo. Jul. 30, 1982) ("Congress specifically provided that the Bankruptcy Reform Act would not become effective until October 1, 1979. Nonpurchase-money security interest which vested in personal property during the 'interim period,' therefore, did not impair any exemption to which a debtor was entitled until after those exemptions became effective on October 1, 1979.")

13. See note 12, *supra.*

14. But, in most cases, it appears that there may be no foreclosure. See notes 9 and 10, *supra.*

15. This is not a case in which the purchase money character of a security interest has been wiped out by subsequent refinancing. See *In re Matthews,* 724 F.2d 798, 800 (9th Cir.1984). Otherwise, the all-or-nothing rule continues to be followed. See *Matter of Schmidt,* 36 B.R. 144 (Bkrtcy.N.D.Ohio 1983).