In the Matter of Robert Sherman CONKLING and Anna Mae Conkling, Debtors.

Robert Sherman CONKLING and Anna Mae Conkling, Movants,

v.

FARMERS HOME ADMINISTRATION, Respondent.

Bankruptcy No. 85-00189-SJ.

United States Bankruptcy Court, W.D. Missouri, St. Joseph Division.

May 24, 1985.

---

Hugh A. Miner, St. Joseph, Mo., for debtors/movants.

F.O. Griffin, Asst. U.S. Atty., Kansas City, Mo., for respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT GRANTING DEBTORS' MOTION FOR LIEN AVOIDANCE IN PART

DENNIS J. STEWART, Bankruptcy Judge.

The debtors have filed a motion for lien avoidance, under section 522(f)(2) of the Bankruptcy Code, of certain farm implements which are characterized as "tools of the trade" within the meaning of § 513.-430(4) R.S.Mo. The respondent opposed lien avoidance on the grounds that the value of the implements in question exceeds the $4,000 limitation placed by the Missouri statute on such exemptions by that statute.[1] The joined issues came on before the court for hearing in St. Joseph, Missouri, on April 30, 1985. The debtors appeared by Hugh A. Miner, Esquire, their counsel, and the respondent appeared by Frederick O. Griffin, Jr., Esquire, Assistant United States Attorney. The evidence then adduced was composed principally of the contrary estimates of value of the subject property made respectively by the debtor, Robert S. Conkling, and the Government's expert witness, Michael R. Harwood. Those respective opinions are portrayed in the following diagram:

| DESCRIPTION OF ARTICLE OF PROPERTY | DEBTOR'S OPINION OF VALUE | GOVERNMENT'S OPINION OF VALUE |
|---|---|---|
| 1967 Ford tractor 500 | $1,500 | $3,000 |
| 1971 Massey Ferguson 410 combine | 1,000 | 1,500 |
| 6' homemade blade | 50 | 200 |
| 4' X 6' John Deere plow | 50 | 250 |
| WL–21 Westendorf loader | 500 | 1,000 |
| TSC wagon with hoist | 125 | 250 |
| 5' BMW rotary mower | 50 | 250 |
| Homemade hay loader | 50 | 100 |
| 2 Montgomery Wards wagons | 200 ($100 each) | 300 ($150 each) |
| 12' Huskey post hole digger | 100 | 300 |
| 14–15' International Harvester disc | 150 | 300 |
| | $4,000 | $7,450 |

The debtor testified that, in addition to the aforementioned property, he also has possession of a Hesston PT–10 mower; it is his opinion that such mower has a value of $325. Because the government's expert witness had not viewed the mower, he did not state an opinion respecting the value. Of the two sets of value, a consideration of

---

1. Section 513.430(4) RSMo provides as follows: "The following property shall be exempt from attachment and execution to the extent of *any person's interest* therein: ... Any implements, professional books, or tools of the trade of such person or the trade of a dependent of such person not to exceed two thousand dollars in value in the aggregate." (Emphasis added.) The debtors thus claim $2,000 apiece in tools of the trade exemptions.

the comparative qualifications of the two principal witnesses, their familiarity with their property, their appearance and demeanor, and their reasons for the respective values, compels the court to accredit the values assigned to the implements by the Government witness. The Government witness had some credentials as an expert, gained from experience as a county supervisor for the Farmers Home Administration. Further, his inspection of the property was of sufficient recency to give the flavor of credibility to his testimony. And the reasons given by him for assigning values were vastly superior to those given by the debtor, whose values were contradicted in many material respects by his prior inconsistent statements.[2] It is therefore found that the respective implements have the values assigned by the Government witness, with the exception of the value of the aforementioned Hesston PT–10 mower, which will be assigned the debtor's valuation of $325.

**2.** In some respects, the debtor's testimony was even contrary to what he had stated in his motion with respect to the values of the property.

**3.** This was admitted by them in open court at the conclusion of the hearing of the merits of this matter.

**4.** See *In re Lovett*, 11 B.R. 123, 125 (W.D.Mo. 1981) ("While the equity is thus an 'interest,' it is not necessarily the only interest of the debtor in the property."); *Kursh v. Dial Finance Company of Missouri*, 9 B.R. 801 (Bkrtcy.W.D.Mo.1981). See, to a contrary effect, *Matter of Miller*, 8 B.R. 43 (Bkrtcy.W.D.Mo.1980). Astonishingly, the court which decided the *Lovett* case, *supra*, recently held that no debtor who lacked an equity interest in property could bring a motion for valuation of that property under section 506(a) of the Bankruptcy Code. See *Matter of Hamilton*, Civil Action No. 83–6070–CV–SJ (W.D.Mo. May 14, 1984) ("Debtors do not appear to have any remaining equity in their house ... Therefore, the court holds that the debtors had no standing to seek and the bankruptcy court no authority to rule the valuation question."). In passing, it might be noted that it was necessary for the bankruptcy court to rule the valuation question *in order to determine* that the debtors had no equity in the property. Section 506(a) of the Bankruptcy Code seems designed to permit determinations of value in such a context, without the necessity of an applicant's requesting specific relief other than the determination. See, e.g., Butler, "Valuation of Secured Claims

The court therefore concludes that the debtors may have lien avoidance of such implements selected by them as have a cumulative total value not exceeding $4,000. This is so even though the debtors admittedly have no equity in any of the implements.[3] The decisions which have germinated in this district have given rise to the doctrine that lien avoidance may be had without regard to the absence of any equity for the debtors in the property. Those decisions hold that the debtors have an interest in the property, within the meaning of § 522(f)(2), *supra*, even in the absence of any equity in the property.[4] At this moment, this remains the law in this district, even though the court which was the prognosticator of the doctrine has, in another context, fairly recently denied that a debtor can be regarded as having *any* interest in oversecured property.[5] And the rule appears to be on the decline in the federal appellate courts.[6] But, despite its

under 11 U.S.C. 506(a)," 89 Commercial Law Journal 342 (1984). So, the holding in the *Hamilton* case may or may not be a repudiation of the *Lovett* decision, *supra*. If it is a repudiation of the former rule, however, it joins a growing line of authority. See note 6, *infra*.

**5.** See note 4, *supra*.

**6.** "The Georgia exemption statute provides in relevant part that: '(A)ny debtor ... may exempt ... for the purposes of bankruptcy ... The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances ... that are held for the personal, family or household use of the debtor or a dependent of the debtor. The exemption of the debtor's interest in the items contained in this subsection shall not exceed $3500 in total value.' ... The legislature ... ha(s) specifically (thus) declined to exempt household goods to the extent that they are encumbered by a lien. The Georgia statute refers only to the 'debtor's interest' in property ..." *In re Pine*, 717 F.2d 281, 283 (6th Cir.1983). "Section 522(f) is not available if an individual state says a debtor is not entitled to a particular exemption." *Matter of McManus*, 681 F.2d 353, 357 (5th Cir.1982). Cf. the Missouri exemption statute, note 1, *supra*, exempting only "any person's interest." See also *In re Fitzgerald*, 729 F.2d 306 (4th Cir.1984), and there is also a generally unreported Third Circuit decision which holds that any lien avoid-

former misgivings on the issue, this court will follow the rule that lien avoidance should be granted.

If the "interest without equity" rule is followed, the decisions which follow it have held that it should be logically extended to permit lien avoidance without limit when there is no equity in the property. This is so, it is said, because, if there is no equity, there is no amount to count against the exemption limit. See, e.g., *In re Van Gorkom,* 4 B.R. 689, 690–691 (Bkrtcy.D.S.D. 1980), to the following effect:

"This Bankruptcy Court holds that although Debtor has no equity in the freezer, Debtor does have an interest in the freezer and is entitled to claim it as exempt. This Court believes Congress did not intend the word 'interest' to be used interchangeably with the word 'equity.' If it had been the intent of Congress to allow the Debtor to exempt property only where the Debtor has equity in the property, Congress would have so stated."

"The statement from the legislative history relied upon by Creditor cannot be made to stand for the proposition that a debtor can only exempt property if the debtor has equity in the property. Rather, the statement means exactly what it says. It was the intent of Congress to allow a debtor exemptions in property up to certain amounts. Only the unencum-

bered portion of the property, in other words any equity the debtor might have in the property, is to be used for the purpose of determining when a debtor has used up his exemptions. If a debtor claims an exemption in property in which he has no equity, there is no reduction in the amount of his exemptions."

The absurdity to which this can lead—lien avoidance without limit and the favoring of debtors without equity over those with equity—seems to belie the doctrine of lien avoidance without equity. When it reaches this proportions, the doctrine has almost always been soundly criticized.[7] Sanity must prevail somewhere. Therefore, this court limits lien avoidance to the exemption ceiling established by statute. It is therefore

ORDERED that the debtors have lien avoidance under section 522(f)(2) of the Bankruptcy Code of such articles as are selected by them within 15 days of the date of entry of this order by means of a written notice of selection designating clearly the articles selected and filed with. the court and served on respondent, the cumulative value of which shall not exceed $4,000 according to the values assigned by the Government witness on all property as aforestated, with the exception of the $325 valuation as assigned by the debtor to the Hesston PT–10 mower.

ance must be restricted to the equity interest. And see *In re Washington,* 41 B.R. 211, 217 (Bkrtcy.E.D.Va.1984) ("It is clear that an equity must exist over unavoidable liens before the debtors can seek application of the avoiding provisions of section 522(f)."). Cf. *Matter of Lipe,* 36 B.R. 597 (Bkrtcy.W.D.Mo.1984).

7. "(I)f lien avoidance is not restricted to the value of collateral which represents the equity of the debtor, by what principle may it be restricted? The answer interposed (by the line of cases granting lien avoidance regardless of whether there is any equity in the property) is 'none.' Accordingly, they interpret a statement in the legislative history of section 522(f)(2) which seems to restrict claimable exemptions to a debtor's equity interest and lien avoidance, in turn, to the extent of the claimable exemptions to mean that a debtor may have lien avoidance without reference to any exemption limitation

when the property on which he seeks lien avoidance is property in which he has no equity." *Matter of Roberts,* 40 B.R. 629, 633 (Bkrtcy.W.D. Mo.1984). "Such reasoning not only ignores the express wording of section 522(f) which makes lien avoidance dependent upon the power to exempt the property under section 522(b), but it creates the specter of unlimited lien avoidances in a manner never foreseen or intended by the framers of the new bankruptcy laws." *Matter of Miller,* 8 B.R. 43, 46 (Bkrtcy.W.D.Mo.1980). "It is unfortunate that an apparently incomplete discussion of subsection (b) of section 522 in the Senate Judiciary Report has led one court to conclude that a debtor's exemption rights in encumbered property is not limited to his equity. *Sioux Falls Veterans Administration Employees Federal Credit Union v. Van Gorkom,* 4 B.R. 689, 6 Bankr.Ct.Dec. 541, 2 C.B.C.2d 477 (Bkrtcy.S.D.1980)." *In re Morgan,* 6 B.R. 701, 703 (Bkrtcy.M.D.Tenn.1980).