In the Matter of John D. RASMUSSEN, Samuel Rasmussen and Nancy Rasmussen, and Forrest Rasmussen and Blanche Rasmussen, Debtors.

John D. RASMUSSEN, and Samuel Rasmussen and Nancy Rasmussen, and Forrest Rasmussen and Blanche Rasmussen, Movants,

v.

GREEN HILLS PRODUCTION CREDIT ASSOCIATION, Respondent.

Bankruptcy No. 83–01142–SJ–W.

United States Bankruptcy Court, W.D. Missouri, W.D.

Oct. 2, 1985.

Arthur B. Federman, Kansas City, Mo., for movants.

Bruce E. Strauss, Kansas City, Mo., for respondent.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL ORDER GRANTING MOTIONS FOR LIEN AVOIDANCE IN PART AND DENYING THEM IN PART

DENNIS J. STEWART, Bankruptcy Judge.

The above-named debtors, all claiming to be farmers within the application of certain state exemption statutes, seek lien avoidance under section 522(f)(2) of the Bankruptcy Code with respect to certain farm implements and machinery. In respective motions, the respective movants sought lien avoidance with respect to the following denominated items of personal property:

*John D. Rasmussen:*
Spray tanks and set up
John Deere pull type sprayer
row crop cultivator, vibra shank
MF baler
H Farmall tractor
wagon auger

*Samuel Rasmussen and Nancy Rasmussen;*
Great Plains drill
Binkley trailer
3 wagons Dakon

*Forrest Rasmussen and Blanche Rasmussen:*
1972 1066 Farmall IH
6 row corn head
Dakon chisel plow

The consolidated motions came on before the court for a hearing of their merits on April 12, 1985, whereupon the parties all appeared by counsel and personally.[1] The material portions of the evidence which was adduced in the hearing are as follows with respect to each set of debtors:

*Samuel S. Rasmussen and Nancy Rasmussen:* The debtors contended that the implements which they seek to exempt and to subject to the lien avoidance process[2] have the following values:

| | |
|---|---|
| Great Plains Drill | $1500 |
| Binkley Trailer | $1500 |
| 3 Dakon wagons | $1200 |

They further contend that each of them should be accredited with a separate tools-of-the-trade exemption under section 513.-

---

1. The debtors' counsel was Arthur B. Federman, Esquire; Bruce E. Strauss, Esquire, appeared for the respondent.

2. Section 522(f) of the Bankruptcy Code allows a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is ... a nonpossessory, nonpurchase-money security interest in any ... implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor."

430(4) RSMo [3] because each of them separately qualifies as a farmer within the meaning of that statute; that Nancy Rasmussen, as well as her husband, was, as of the filing of these title 11 proceedings, fully engaged in farming, although then 7 months' pregnant; that, in respect of farming operations, according to the uncontradicted testimony of Samuel S. Rasmussen, Nancy Rasmussen "did about everything the rest of us did"; that the debtors resided in Missouri at the time of the initial filing of their chapter 11 proceedings, but later, on December 1, 1984, moved to the State of Iowa, and thereafter, on January 3, 1985, converted the chapter 11 proceedings to chapter 7 proceedings; that they will conduct their future farming operations around the area of Humeston, Iowa; that, according to a written contract which was signed the day before the hearing, they undertook to do custom farming at $35 per acre for a Richard Markes; that they also farm for Mr. Rasmussen's father and brother; that, otherwise, Samuel S. Rasmussen works as a sales person for Moorman Feeds, a job which he contends is only a part-time job, although in the meeting of creditors he had admitted working 40 hours per week at it; that he and his wife will earn annually about $2,000 from farming and more than that, $5,000 or more, from Moorman Feeds; and that his above estimates of the value of the items with respect to which lien avoidance is sought are principally based upon his attendance at 5 or 6 farm sales around Iowa and Missouri.

*John D. Rasmussen.* It was the uncontradicted testimony of the movant John D. Rasmussen that, as of the date of filing of these title 11 proceedings, he was engaged in farming in Missouri; that he had previously been so engaged "all his life"; that, after he harvested his 1984 crops, he took on a part time job in transporting recreational vehicles; that he will also farm some of Mr. Markes' ground; that he has a con-

tract to farm some 260 acres; that he is looking for additional ground to farm this year; that he values the items with respect to which he seeks lien avoidance as follows—spray tanks $300, John Deere pull type sprayer $500, row crop cultivator $600, MF baler $300, H Farmall $300, and wagon auger $50; that he values other items of equipment as follows: tools $300, a 1979 Ford $500, and a six-row cornhead $2000; that the last item—the cornhead—was scheduled initially as property of his father, but he now claims the ownership of it; that his farming operations in the future will center around Humeston, Iowa, a town about 65 miles south of Des Moines, Iowa, but he lives in Wesley, Iowa, about three hours away from Humeston; that the other movants also live about three hours distant from Humeston; that, when the farming seasons occur, it is his intention to leave Wesley and go to Humeston and stay on the land while farming it for 3 to 4 days at a time; that he has an understanding with his current employer, who will permit him to be absent from his employment for the periods which will be necessary to conduct farming operations; and that he has no equity in any of the property with respect to which he seeks lien avoidance.

*Forrest Rasmussen and Blanche Rasmussen.* These debtors have been residents of Iowa since the inception of these title 11 proceedings. Forrest Rasmussen is currently employed in the recreational vehicle transportation business. He delivers Winebagos anywhere in the United States or Canada for a fee of 9 cents per mile. He has been engaged in this business for some 13 years. But, according to his testimony, when farm work comes up, it comes first and he sacrifices any opportunities which he may have in the recreational vehicle business in order to carry out the farm work. He was engaged in farming and in raising hogs at the time of the filing of these title 11 proceedings and he is looking for land to farm this year. He

---

**3.** That section pertinently provides as follows: "The following property shall be exempt from attachment and execution to the extent of any person's interest therein: ... Any implements, professional books or tools of the trade of such person or the trade of a dependent of such person, not to exceed two thousand dollars in value in the aggregate."

assigns the following values to the property which he wishes to exempt: 1972 1066 Farmall IH $3,400 and Dakon chisel plow $1,500.

The respondent has adduced evidence to show that, by and large, the values attributed by the debtors to the several items of equipment and machinery are much lower than those which are attributed to them by Charles Vandervert, a credit analyst for Green Hills Production Credit Association, whose testimony consistently ranks the implements higher in value than that attributed to them by the movant debtors. A chart of the relevant differences is contained in the marginal note.[4] The admission of the debtors and the universal contention of the respondent is that, with respect to all of the implements in question, the debtors have no equity interest because, in all cases, the balance due on the item to the lienholder exceeds the value thereof.

### Conclusions of Law

The facts above found initially adumbrate the issue of whether the movant debtors actually pursue the trade of farming so that the tools-of-the-trade provision of the lien avoidance statute applies to them.[5] These facts show clearly that, with respect to each of the debtors who seeks lien avoidance, farming is a part-time vocation and that another vocation is principally followed and is productive of a majority of each debtor's income. Previously, however, this court has applied a liberal definition in determining whether the farming trade is being plied by title 11 debtors. The test is essentially whether any substantial portion of the debtor's income is earned through farming activities. See *Matter of Lipe*, 36 B.R. 597, 598 (Bkrtcy. W.D.Mo.1983). "Under this more flexible and realistic standard, the Court is not barred from finding that a debtor is engaged in the farming trade even though he derives the bulk of his personal income from sources outside farming." *In re La-Fond*, 45 B.R. 195, 200 (Bkrtcy.D.Minn. 1984). "(I)n order to avoid liens attached to 'tools of the trade' pursuant to section 522(f)(2)(B), a debtor must prove that he is 'legitimately engaged in a trade which regularly uses the specific tools or implements being exempted,' ... Although as a general rule a debtor must be engaged in the relevant trade on the date of the bankruptcy petition, a temporary abatement of work in the trade may not be fatal to the claimed exemption for tools of the trade ... Courts have upheld the exemption in the absence of an intentional abandonment by the debtor." *Flick v. United States*

4.

| Name of debtor | Item | Debtors' value | Respondents' value |
|---|---|---|---|
| John D. Rasmussen | Spray tools and set up | $300 | |
| | John Deere pull type sprayer | $500 | |
| | row crop cultivator, vibra shank | $600 | |
| | MF baler | $300 | |
| | H Farmall tractor | $300 | |
| | wagon auger | $50 | $250 |
| | tools | $300 | |
| | six-row-cornhead | $2,000 | |
| Samuel Rasmussen and Nancy Rasmussen | Great Plains drill | $1,500 | $4,500 |
| | Binkley trailer | $1,500 | |
| | 3 Dakon wagons | $1,200 | $1,650 |
| Forrest Rasmussen and Blanche Rasmussen | 1972 1066 Farmall IH | $3,400 | $9,800 |
| | six row cornhead | $2,000 (claimed by John D. Rasmussen in hearing) | |
| | Dakon chisel plow | $1,500 | |

5. See note 2, *supra*.

*through Farmers Home Administration,* 47 B.R. 440, 443 (W.D.Pa.1985). The testimony of the respective debtors to the effect that they continue to earn substantial amounts from farming activities; that they desire to earn all their income, if and when it is possible to do so, from farming; and that any lull in their farming activities is strictly involuntary is uncontradicted. And it meets the standards set out in the governing decisions. This court accordingly finds the movant debtors each and all to be "farmers" so as to be eligible to claim farm implements and machinery as tools of their respective trades.

The other issue which is shadowed forth by the facts of this case is whether the values of the items sought to be made the subjects of lien avoidance exceed the limits imposed by statute upon the values in such items as may be claimed as exempt. The respondent has, as observed above, adduced evidence to demonstrate that the values may exceed the limits imposed by the Missouri tools-of-the-trade exemption— $2,000 per person.[6] The debtors' evidence is contrary, tending to show that the value of the items which they seek to avoid the liens with respect to is within the limits established by the Missouri statute.[7] And they further argue that they are entitled, at any rate, to claim exemptions under a more generous provision of the laws of Iowa.[8]

Under the legal principles which bind this court, however, this evidentiary struggle may simply be irrelevant. It is well established in this district that it is not necessary that a debtor have an equity in the property (in the sense of an excess in value over the balance due) as a prerequisite to lien avoidance. *In re Lovett,* 11 B.R. 123 (W.D.Mo.1981); *Kursh v. Dial Finance Company of Missouri,* 9 B.R. 801 (Bkrtcy.W.D.Mo.1981); *Matter of Lipe, supra; Matter of Roberts,* 40 B.R. 629 (Bkrtcy.W.D.Mo.1984). If there is no equity in the property which is the subject of lien avoidance, the decisions which adopt the above rule hold that the lien on that property may be avoided, but its value does not count against the total value of property as to which a lien may be avoided. "It was the intent of Congress to allow a debtor exemptions in the property up to certain amounts. Only the unencumbered portion of the property, in other words any equity the debtor might have in the property, is to be used for the purpose of determining when a debtor has used up his exemptions. If a debtor claims an exemption in property in which he has no equity, there is no reduction in the amount of his exemptions." *In re Van Gorkom,* 4 B.R. 689, 691 (Bkrtcy.D.S.D.1980). In that case, the result was predicated upon a portion of the legislative history behind the Bankruptcy Reform Act of 1978 which read to the

---

**6.** See note 3, *supra.*

**7.** See note 4, *supra.*

**8.** The Iowa statute would appear not to apply to Samuel S. and Nancy Rasmussen, who were resident in Missouri at the time of their initial filing. They later moved to Iowa, according to the uncontradicted evidence, before the conversion of the chapter 11 proceedings to chapter 7 proceedings. "The critical time for a determination as to whether the debtor is entitled to a homestead exemption is the date on which the Petition was filed. Under section 541(a) of the Code the commencement of a case creates an estate and at that time the property comprising the estate is to be determined as well as any rights as to the property included in the estate." *In re White,* 18 B.R. 95, 96 (Bkrtcy.D.Vt.1982). Our court of appeals has held, in *In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir.1984), that "an

examination of what constitutes the property of the estate in a converted case leads us to conclude that the date of conversion controls what exemptions may be claimed from (estate) property." But crucial reliance was placed in that decision upon the contents of Rule 1019(1) of the Rules of Bankruptcy Procedure to the effect that, if lists, inventories and schedules *"have not been previously filed,* the debtor ... (shall file the documents) as if an order for relief had been entered on an involuntary petition on the date of the entry of the order directing that the case continue under chapter 7." (Emphasis added.) In the cases at bar, however, schedules had been filed before the date of conversion. And, further, as pointed out below in the text of this memorandum, the applicability of the Iowa statute may, in this case, be purely academic inasmuch as it appears that the debtors' values fall substantially within the limits of the Missouri exemption statute.

following effect: "Property may be exempted even if it is subject to a lien, but only the unencumbered portion of the property is to be counted in computing the value of the property for the purposes of exemption." S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. and Admin.News 1978, pp. 5787, 5861–5862. This court has later noted that the quoted portion "seems to restrict claimable exemptions to a debtor's equity interest and lien avoidance, in turn, to the extent of claimable exemptions." *Matter of Roberts, supra,* at 633. But the progeny of the rule of *Van Gorkom, supra,* is not to this effect. "If a debtor claims an exemption in property in which he has no equity, there is no reduction in the amount of his exemptions." *Id.* at 691. The context of that opinion and of its progeny makes it clear that the value limitations on exemptions, as applicable in lien avoidance, do not figure in calculations to determine the maximum allowable.[9] And this is only consistent with the proposition that an equity in the property is not a prerequisite to lien avoidance. "The principle that, without regard to any equity, the lien should be wholly avoided has led the courts which have adopted it to apply a corollary which would appear to result in lien avoidance without any limitation as to the amount of value of collateral which may be the subject of such avoidance. For, if lien avoidance is not restricted to the value of collateral which represents the equity of the debtor, by what principle may it be restricted? The answer interposed by this line of cases is 'none.'" *Matter of Roberts, supra,* at 632–633; *Matter of Miller,* 8 B.R. 43, 46 (Bkrtcy.W.D.Mo.1980). It appears, therefore, that without regard to value, the within motions for lien avoidance must be granted under the law of this district.

■ This court declines, however, to grant lien avoidance with respect to the 6 row cornhead, which, according to the evidence which was adduced in the hearing of this matter, was claimed by Forrest and Blanche Rasmussen in their schedules but, later, at the time of the hearing, was claimed by John D. Rasmussen. There is no satisfactory explanation for the postpetition transfer of ownership of this property and the only ostensible reason for such a transfer was to bring each of the claims of exemption of the several debtors within what was seen as the statutory maximum. The fact of scheduling by one debtor and the later claiming of the same exemption by another is sufficient to establish the improper motive which the decisions hold is sufficient to impugn the transfer. See, e.g., *Matter of Reed,* 700 F.2d 986, 991, n. 3 (5th Cir.1983), and cases there cited. The facts of this case, moreover, seem stronger than the facts of those cases because, in this case, the claimed transfer took place after bankruptcy.[9a] Thus, even without an

---

**9.** The *Van Gorkom* opinion purports to contain the limiting principle that "a debtor can avoid a lien on exempt property but only to the extent of the allowed exemption." 4 B.R. at 691. But the context of that statement makes it clear that this principle applies only when there is equity in the property on which the lien is avoided, i.e., the value of the chattel *counts* against the exemption total: "For example, if the debtor chose to avoid a lien of $1,000.00 on property worth $500.00 and claimed as exempt under 11 U.S.C. Section 522(d)(3), and assuming *debtor has used up all his other exemptions,* then the debtor would be allowed to avoid the lien but only to the extent of $200.00, and the creditor would still have a lien for $300.00 on the property." *Id.* at 692. (Emphasis added.) Although *Van Gorkom* seems generally to have been followed in this respect, it has been criticized in some cases. See, e.g., *In re Morgan,* 6 B.R. 701, 703 (Bkrtcy.M.D.Tenn.1980), to the effect that "(i)t is unfortunate that an apparently incomplete discussion of subsection (b) of section 522 in the Senate Judiciary Report has led one court to conclude that a debtor's exemption rights in encumbered property is not limited to his equity. *Sioux Falls Veterans Administration Employees Federal Credit Union v. Van Gorkom,* 4 B.R. 689, 6 Bankr.Ct.Dec. 541, 2 C.B.C.2d 477 (Bkrtcy.S.D.1980)."

**9a.** It is plain from the surrounding circumstances that the debtors' counsel had no part in the alleged change of ownership, for, even with the change, under circumstances in which the statutory maximums would apply, John D. Rasmussen had already claimed in excess of the Missouri maximum. But it was certain that Forrest

improper motive, the exemption cannot be claimed by John D. Rasmussen, who now purports to claim it, because the property was not his, admittedly, as of the date of filing, the date as to which the exemptions of a debtor are properly to be determined. The same ruling must be made with respect to some $300 worth of tools which were only belatedly claimed to be subject to the lien avoidance statute by the debtor John D. Rasmussen.[10] And the parties all admit that a decree of lien avoidance is not necessary with respect to a 1979 Ford pickup, on which there is no lien.[11]

Otherwise, alternatively, this court finds that the debtors' opinions of the value of the property are the more credible values. The testimony of the respondent's expert as to value was admittedly dated in many respects and it is the controlling fact—in many ways an unconscionable one, admittedly—that the debtors are the persons having most complete and familiar knowledge of the current condition of the implements.[11a] Therefore, if the value limitations of the state exemption statutes are applicable, the chart set out in marginal note 4 demonstrates that the items claimed by John D. Rasmussen, without the cornhead and tools abovementioned, have a cumulative value substantially within the exemption limit of the Missouri tools-of-the-trade statute.[12] The same is true with respect to the debtors Samuel and Nancy Rasmussen. The debtors Forrest and Blanche Rasmussen claim a total of $4,900 in exemptions, as observed above. This substantially exceeds the $4,000 limitation (for two persons) embodied in the Missouri tools-of-the-trade statute. But Forrest and Blanche Rasmussen, according to their uncontradicted testimony, have been residents of Iowa since before the inception of these title 11 proceedings and they were residents of Iowa as of the date of such filing. As such, they appear entitled to claim the Iowa exemption which, with respect to the tools of the trade, seems to have a $5,000 limitation. See section 627.6 of the Iowa Code Annotated to the effect that "A debtor who is a resident of this state may hold exempt from execution the following property: ... Any combination of the following, not to exceed a value of five thousand dollars in the aggregate: ... If the debtor is engaged in farming, a team consisting of not more than two horses or mules or two yokes of cattle, and the wagon or other vehicle, with the proper harness or tackle, or other necessary implements of husbandry, or a combination of these ..." Thus, although it may conceivably dilute other claimable exemptions of these debtors,[13] the court must, in the matter at bar, grant lien avoidance with respect to the 1972 1066 Farmall IH 3400 and the Dakon chisel plow.

---

and Blanche had claimed as much or more than their maximum in what appear to be very essential items. Therefore, it was apparently thought that John D. Rasmussen could dispense better with some of his items (in the sense of disclaiming them as exempt) to select the six-row cornhead. "Major improprieties will not be permitted or condoned in schedules filed by a debtor who signs and acknowledges under penalty of perjury that the same are true and correct. To do otherwise is to make a mockery of the process." *In re Collins*, 19 B.R. 874, 878 (Bkrtcy.M. D.Fla.1982). Further, John claims the Iowa exemptions.

10. As is observed above in the text of this memorandum, the tools were not claimed in the initial motion for lien avoidance.

11. At the conclusion of the hearing of April 12, 1985, Erlene Krigel, the trustee in bankruptcy, offered to demonstrate that there was no lien on this item. Her contention to this effect was acquiesced in by the parties.

11a. The respondent's expert had seen some of the items the week before the hearing. But, with respect to most of them, his knowledge antedated the hearing considerably and was based upon a prior statement rendered by the debtors. He acknowledged that the values of farm equipment has greatly declined since the rendition of that statement.

12. The total of the equipment claimed by John D. Rasmussen according to the chart in note 4, *supra,* is $2050.

13. As noted above, these debtors may not claim the exemption with respect to the six-row cornhead. See note 9a, *supra*.

Accordingly, for the foregoing reasons, it is hereby

ORDERED, ADJUDGED AND DECREED that the within motions for lien avoidance be, and they are hereby, granted except with respect to the six-row cornhead, the $300 in tools claimed by John D. Rasmussen, the 1979 pickup, and any six-row cornhead claimed by the debtors Blanche and Forrest Rasmussen. The court adheres to the rule of this district, as explicted above, that equity is not a necessary prequisite to lien avoidance in accordance with recent local decisions.[14]

---

**14.** See, e.g., *Matter of Conkling,* In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code No. 85–00189–SJ, 54 B.R. 972 (Bkrtcy.W.D.Mo.1985): "The decisions which have germinated in this district have given rise to the doctrine that lien avoidance may be had without regard to the absence of any equity for the debtors in the property. See *In re Lovett,* 11 B.R. 123, 125 (W.D.Mo.1981) ("While the equity is thus an 'interest,' it is not necessarily the only interest of the debtor in the property."); *Kursh v. Dial Finance Company of Missouri,* 9 B.R. 801 (Bkrtcy.W.D.Mo.1981). See, to a contrary effect, *Matter of Miller,* 8 B.R. 43 (Bkrtcy.W.D.Mo.1980). ... the court which decided the *Lovett* case, *supra,* recently held that no debtor who lacked an equity interest in property could bring a motion for valuation of that property under section 506(a) of the Bankruptcy Code. See *Matter of Hamilton,* Civil Action No. 83–6070–CV–SJ (W.D.Mo. May 14, 1984) ("Debtors do not appear to have any remaining equity in their house ... Therefore, the court holds that the debtors had no standing to seek and the bankruptcy court had no authority to rule the valuation question."). At this moment, this (doctrine that the debtor need not have equity in the property to avoid a lien on it) remains the law in this district, even though ... the rule appears to be on the decline in the federal appellate courts ... *In re Pine,* 717 F.2d 281, 283 (6th Cir.1983); ... *Matter of McManus,* 681 F.2d 353, 357 (5th Cir.1982) ... See also *In re Fitzgerald,* 729 F.2d 306 (4th Cir.1984) ... and ... a generally unreported Third Circuit decision which holds that any lien avoidance must be restricted to the equity interest. And see *In re Washington,* 41 B.R. 211, 217 (Bkrtcy.E.D.Va. 1984) ("It is clear that an equity must exist over unavoidable liens before the debtors can seek application of the avoiding provisions of section 522(f).") See also and compare *Simonson v. First Bank of Greater Pittston,* 758 F.2d 103, 105 (3d Cir.1985) ("We think ... that 'an interest of the debtor in property' was intended to mean an interest of the debtor measured by taking into account those interests of other parties which may not be avoided under section 522(f)."), and *In re Maddox,* 713 F.2d 1526 (11th Cir.1983); *In re Moyer,* 39 B.R. 211 (Bkrtcy.N.D.Ga.1984), affirmed without opinion, 746 F.2d 814 (11th Cir. 1984), cert. denied, —— U.S. ——, 105 S.Ct. 2113, 85 L.Ed.2d 478 (1985); *In re Brown,* 734 F.2d 119 (2d Cir.1984) (equity is not a necessary prerequisite to lien avoidance). See also *Matter of Allen,* 725 F.2d 290 (5th Cir.1984) (equity is a necessary prerequisite to lien avoidance); *In re Hall,* 752 F.2d 582 (11th Cir.1985) (no equity needed). Thus, four of the six circuits to decide the question have decided that equity is a necessary prerequisite to lien avoidance.