**In re Martha Ann BRADSHAW, Debtor.**

**Bankruptcy No. 90–05751.**

United States Bankruptcy Court,
E.D. Wisconsin.

April 10, 1991.

Robert Michelson, Racine, Wis., for debtor.

Michael F. Dubis, Trustee, Waterford, Wis., pro se.

## DECISION

DALE E. IHLENFELDT, Bankruptcy Judge.

On October 26, 1990, the debtor, Martha Ann Bradshaw, filed a petition under chapter 7 of the Bankruptcy Code. The trustee, Michael F. Dubis, has objected to the debtor's claimed homestead exemption under Wisconsin law in property at 1926 Jay Eye See Avenue in Racine, Wisconsin. Trial was held on March 22, 1991. The debtor appeared in person and by her attorney, Robert Michelson, and the trustee appeared in his own behalf. The debtor was the sole witness at the trial. The facts are as follows.

The debtor and her husband purchased the property, a duplex, in 1964 or 1965. They lived in the lower flat and rented out the upper flat. After her husband died in 1984, the debtor continued to live in the lower flat. Apparently they had owned the property in joint tenancy, since there was no probate proceeding following his death. In 1987, the debtor's son, Jeffrey, moved in with her, and in 1988, she moved out. At that time she moved into an apartment with her fiance, Dave Skrede at 7217—57th Avenue, Kenosha, Wisconsin. After she moved to Kenosha, Jeffrey continued living in the lower flat and agreed to pay her $350 a month rent. The upper flat was rented out for that same amount, $350 a month.

The Racine duplex has an assessed value of about $47,000, with a mortgage debt of $18,600 and unpaid real estate taxes of $3,500. The debtor was some months behind in her mortgage payments.

In her B–4 exemption schedule, the debtor listed "Homestead 815.20 $40,000," but she did not identify the property claimed exempt. "815.20" refers to the Wisconsin homestead exemption statute. In her B–1 Real Property schedule, however, she stated

"homestead at:   same address listed for Debtor(s)   Fee Interest
                 on first Petition page                $47,000"

On her "first Petition page," the debtor had listed "7217—57th Ave. # 3, Kenosha, WI 53142" as her address. That is the address of the Kenosha apartment where she was living with her fiance, Dave Skrede. Her attorney said this was his usual way of claiming a homestead exemption. He indicated that it was a mistake on his part, and that she had intended to claim the Racine property as her homestead.[1] At the § 341 hearing on December 6, 1990, the trustee announced his intention to object to the debtor's claim of a homestead exemption in the Racine property, and thereafter, she filed an amended B–1 Real Property schedule stating

"homestead at:                       Fee Interest
      1926 Jay Eye See Avenue         $47,000"
      Racine, WI 53403

In a chapter 7 bankruptcy case, exemptions, including homestead exemptions,

---

**1.** In fact, the debtor's B–4 exemption schedule reflects this same careless treatment generally. It appears to be a kind of pre-packaged "boiler plate" photostat. Among items listed there and then deleted are "Business equipment & inventory" at $7,500 and "Personal injury" at $25,000. Neither has any relevance for this debtor.

are defined and determined as of the date the bankruptcy petition is filed. *In re Zahn,* 605 F.2d 323 (7th Cir.1979); *In re Summers,* 108 B.R. 200, 203 (Bk SD IL 1989); *In re Alagna,* 107 B.R. 301, 314 (Bk CO 1989); *In re Hursman,* 106 B.R. 625, 626 (DC ND 1988); *In re Kincaid,* 96 B.R. 1014, 1021 (9th Cir. BAP 1989); *In re Lindsey,* 94 B.R. 723, 724 (Bk SD AL 1988); *In re Knudsen,* 80 B.R. 193, 196 (Bk CD CA 1987); *In re Van Hove,* 78 B.R. 917, 920 (ND Iowa 1987); *In re Bernstein,* 62 B.R. 545, 550 (Bk VT 1986); *In re Penland,* 34 B.R. 536, 540 (Bk ED TN 1983). "Exemption rights are determined based on the circumstances present at the time of filing. (citing cases) Changes occurring after filing are not relevant." *In re Brzezinski,* 65 B.R. 336, 339 (Bk WD WI 1985).

Courts have differed in their treatment of exemptions in cases where the debtor initially filed under chapter 11 or chapter 13 and later converted the case to a case under chapter 7. *In re Williamson,* 804 F.2d 1355 (5th Cir.1986); *In re Lindberg,* 735 F.2d 1087 (8th Cir.1984); *In re Winchester,* 46 B.R. 492 (9th Cir. BAP 1984). As the court suggested in *Matter of Patterson,* 825 F.2d 1140 (7th Cir.1987), the date of asking for the exemption, rather than the date the original chapter 7 petition was filed, might be the relevant date for determining the availability of the exemption in such cases. In voluntary cases filed under chapter 7, however, courts have held uniformly, so far as this court has been able to determine, that exemptions are to be defined as of the date of the filing of the petition.[2]

Section 815.20 of the Wisconsin Statutes provides:

**815.20. Homestead exemption definition.**

(1) An exempt homestead ... selected by a resident owner and occupied by him or her shall be exempt from execution ... to the amount of $40,000, ... except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years.

Regarding the above statute, the court in *In re Neis,* 723 F.2d 584, 587 (7th Cir.1983) said:

The statute thus requires that an owner be a resident-occupant of the property claimed as a homestead subject to two exceptions:

(1) when the owner is temporarily absent with an intent to return and

(2) when the house is to be sold with the proceeds intended for the purchase of another homestead. Thus, with respect to these exceptions, the owner's intent is crucial to a determination of qualification for the homestead exemption.

The debtor was the owner but not the occupant of the Racine property on October 26, 1990, the relevant moment for determining the availability of the homestead exemption in this case. *In re Neis, supra,* 723 F.2d at 586. Accordingly, the court must determine whether her claim to a homestead exemption falls within the first of the above two exceptions, i.e., whether she was temporarily absent with an intent to return. With respect to this exception, her intent on October 26, 1990 is crucial to a determination of whether she qualifies for the homestead exemption. The question of the debtor's intent to abandon or create a homestead is a question of

**2.** The cases of *In re Rasmussen,* 54 B.R. 965 (Bk WD MO 1985) and *In re Dyess,* 65 B.R. 143, 14 BCD 1379 (Bk WD LA 1986) demonstrate the kind of problems that arise in these cases. In *Rasmussen,* the debtors filed a chapter 11 petition in Missouri where they were then living. They moved post-petition to Iowa, and when their case was converted to a case under chapter 7, they sought to claim the more generous Iowa exemptions. In *Dyess,* the debtors filed a chapter 13 petition in Louisiana. Unable to find work in Louisiana, they moved to Mississippi, where they were living when their case was converted to a case under chapter 7. The chapter 7 trustee objected to their claim of a homestead exemption in their Louisiana property.

fact, or of inference to be drawn from facts. *In re Neis, supra,* 723 F.2d at 589.

There is a strong public policy in Wisconsin to protect the homestead exemption. Because of this public policy, homestead statutes are liberally construed in favor of the debtor, and homestead rights are preferred over the rights of creditors. *Schwanz v. Teper,* 66 Wis.2d 157, 163, 223 N.W.2d 896 (1974); *Eloff v. Riesch,* 14 Wis.2d 519, 525, 111 N.W.2d 578 (1961). Thus, the Wisconsin courts have consistently held that persons who are involuntarily removed or prevented from occupying their homesteads do not lose their homestead rights in the property. In the case of *In re Lumb,* (Case No. 81–C–1159, June 17, 1982), the district court for this district [affirming *In re Lumb,* 12 B.R. 862 (Bk ED WI 1981) ] said:

> In sum, while the Wisconsin Supreme Court has been strict in requiring that persons able to exercise a reasonable degree of volition in their place of residence prove by some one or more concrete acts, and not merely through expressed intent, their intent to maintain certain property as a homestead, and also prove their present entitlement to reside on the claimed homestead property, the Court has been more lenient toward persons who indisputably established a homestead and then were forced by circumstances not of their own making to leave the homestead premises.

When asked about the Racine property at the § 341 hearing, the debtor said, "I don't live in it now; I rent it out." Following are some of the other questions she was then asked and the answers she gave.

Q: When was the last time you lived there?

A: Just a short time ago.

Q: Do you have any intention of returning to that?

A: Oh, yes ... eventually.

Q: When was the last time you lived there?

A: Oh, a couple years now.

Q: You don't know when you'll be moving back?

A: No, not really.

Q: Is it currently listed for sale?

A: No, I'd like to sell it if I could.

At the March 22, 1991 trial, the debtor said that her son was supposed to pay $350 a month rent. He had not been paying it regularly because he had not been regularly employed, but he did have a job now. She said he was 24 or 25 years of age when he moved in with her in 1987, along with his fiancee and a four year old child, and that she had moved out a year later because it was too crowded and there had been problems. She acknowledged that her driver's license, her auto registration, and her income tax returns for the past two years showed her Kenosha address, and that she gave that as her address for the 1990 census. She said she didn't know whether she had deducted depreciation for the entire Racine property on her tax returns, and she did not produce the returns.

She testified that she had changed her driver's license back to the Racine address "last year," later acknowledging that she had changed it on December 11, 1990, after the § 341 hearing, when it had come up for renewal. She also testified that she had moved back to Racine "around the holidays or the first of the year." Asked to explain this sudden and unplanned move, she said that she had had some sort of falling out with her fiance, Skrede, and that her son had talked about moving out of the lower flat.

A detailed discussion of the Wisconsin case law on this subject is contained in "Establishment and Abandonment of a Wisconsin Homestead." 1973 Wis.L.Rev. 876. Physical occupancy is of course strong evidence of intent to create a homestead. The author states that in order to overcome the fact of nonoccupancy, it appears necessary to show that occupancy was either impossible or was prevented by a valid excuse and that the owner was taking overt steps necessary to permit occupancy within a reasonable time. *Id.* at 878.

The evidence does not support the debtor's claim that she intended the Racine

property as her homestead on October 26, 1990. It shows instead that her actual home was with her fiance, Dave Skrede, in Kenosha. Her testimony, which varied in a number of respects, was of course self serving, and her failure to call Skrede and her son, who was present at the trial, as witnesses suggests that their testimony may not have supported her position. She failed to show that her occupancy of the Racine property was impossible or prevented by a valid excuse. She was not "forced by circumstances not of (her) own making to leave" the premises. She left voluntarily and was gone for two years prior to bankruptcy, and there was no demonstrable intent on her part at the time she filed bankruptcy to reoccupy the property at any time in the future. Asked at the § 341 hearing, six weeks after the filing of her petition, if she knew when she would be moving back to Racine, she replied, "No, not really."

In *Pedersen v. Nielsen,* 212 Wis. 608, 612, 250 N.W. 400 (1933), the court said: [T]he words "temporary removal" as used in this statute mean "a fixed and temporary purpose, or for a temporary reason, and that in order to prevent an abandonment by such removal it must be made with the certain and abiding intention of returning to the premises and residing therein as a homestead."

The court went on to say: "A vague intention to return at some future day and reside there will not preserve the homestead." *Id. Accord, Petition of Robers,* 220 Wis. 547, 265 N.W. 578 (1936).

■ The fact that her son occupied the premises as a tenant operates against, rather than in support of, her claim to a homestead in the property. Where a relative occupies the premises in his own behalf and not as a representative of the owner, the owner cannot gain status through that occupancy. *Estate of Fish,* 214 Wis. 464, 253 N.W. 387 (1934). Her sudden move back to Racine following the § 341 hearing is not persuasive. Professed intentions of an owner that are expressed ex post facto, after intervening occurrences have made them advantageous, are not per-suasive. *Blackburn v. Lake Shore Traffic Co.,* 90 Wis. 362, 367, 63 N.W. 289 (1895).

The court concludes that the debtor is not entitled to and may not claim a homestead exemption for the property at 1926 Jay Eye See Avenue in Racine, Wisconsin. This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.