In the Matter of William T. HULK and Amelia Hulk, Debtors.

William T. HULK and Amelia Hulk, Plaintiffs,

v.

Gilbert L. ROSENBAUM, Esq., Trustee Hartford Hospital, Inc., United States Leasing Corporation, Defendants.

Bankruptcy No. 2–80–00764.
Adv. Proceeding No. 2–80–0369.

United States Bankruptcy Court,
D. Connecticut.

Jan. 13, 1981.

Martin W. Hoffman, Hartford, Conn., for plaintiffs.

Gilbert L. Rosenbaum, Trustee, pro se.

Gregory A. Sharp, Hartford, Conn., for United States Leasing Corp., defendant.

Nair & Levin, Hartford, Conn., for Hartford Hospital, Inc., defendant.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

Plaintiffs, Amelia (Amelia) and William (William) Hulk, (the Hulks), initiated this adversary proceeding by filing, pursuant to 11 U.S.C. § 522(f)(1), a joint complaint to avoid judicial liens which allegedly impaired their exemptions.[1] The Hulks named as defendants Gilbert L. Rosenbaum, the trustee of both Hulk estates, and Hartford Hospital, Inc. (Hospital) and United States Leasing Corporation (USLC), the holders of judicial liens on the Hulks' home.

The facts giving rise to this action are not in serious dispute, and may be summarized as follows. The Hulks were married in June, 1977. Amelia had been married before and had a child from her prior marriage. On October 17, 1978, Amelia and William jointly purchased a residence located at 260 Cavan Lane, Glastonbury, Connecticut (property) for $54,500.00. The purchase was financed through a bank mortgage of $46,500.00, a $5,000.00 gift to Amelia from her father and the balance from joint funds of Amelia and William.

In 1979, Amelia applied to the State of Connecticut for welfare benefits for the child of her prior marriage because the child's father was not making child support payments. Amelia was told by a welfare department employee that she would not qualify for benefits if she owned real property. The welfare employee recommended that Amelia transfer her half interest in the property to her husband. Accordingly, Amelia transferred her interest to William for no consideration on April 18, 1979.[2] Thereafter, she briefly received the welfare benefits, but when they ended, she neglected to have her half interest in the property reconveyed to her.

In June, 1980, the Hulks were experiencing financial difficulties. William consulted with an attorney about possible ways to resolve their predicament and keep their home. The attorney advised William to transfer Amelia's half interest in the property back to her prior to the filing of Chapter 7 petitions. An admitted purpose of the proposed transfer was to permit Amelia to take advantage of the homestead exemption provided for by 11 U.S.C. § 522(d)(1), (5) and (m).[3] William transferred Amelia's half interest back to her on July 3, 1980. It is not disputed that at the time of the transfer on July 3, 1980, and other relevant times, William was insolvent. On July 23, 1980, the Hulks filed a joint petition for relief under Chapter 7 of the Bankruptcy Code.[4]

1. Section 522(f) provides as follows:

    Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

    (1) a judicial lien . . . .

2. Amelia subsequently discovered that the information given her by the welfare employee was not correct, and that she would have qualified for the benefits she received notwithstanding her interest in the property.

3. *Section 522. Exemptions.*

    . . . . .

(d) The following property may be exempted under subsection (b)(1) of this section:

    (1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property . . . the debtor . . . uses as a residence . . . .

    . . . . .

    (5) The debtor's aggregate interest, not to exceed in value $400 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property.

    . . . . .

(m) This section shall apply separately with respect to each debtor in a joint case.

4. Contrary to proper procedure, in the joint petition the Hulks failed to file separate choices of exemptions, or schedules of the assets and

The parties agree that the value of the property on the date of the filing of the joint petition was $61,000.00. They also agree that in addition to existing mortgage indebtedness totaling $49,900.00, the property is encumbered by three judicial liens, to wit: an attachment by Hospital recorded November 20, 1979 for $1,400.00, a second attachment by Hospital recorded May 2, 1980, for $2,000.00, and an attachment by USLC recorded June 11, 1980, for $2,000.00, all levied when the property was solely in the name of William.

To the Hulks' complaint, USLC filed an answer and alleged as affirmative special defenses and counterclaim that the July 3, 1980 transfer by William to Amelia of a one-half interest in the property was a fraudulent transfer and voidable under 11 U.S.C. § 548.[5] The trustee has filed a similar pleading alleging the voidability of the said transfer under either 11 U.S.C. § 548 or 11 U.S.C. § 544, and requesting "that the court set aside the transfer of July 3, 1980, and that the trustee have such other and further relief as is just." Hospital neither filed pleadings nor appeared at the trial.

■ The central issue as presented to the court by the parties is whether William's transfer of a one-half interest in the property to Amelia on July 3, 1980, twenty days before the Hulks filed their petition for relief, is a fraudulent and thus voidable transfer. Section 548 of the Bankruptcy Code sets forth two disjunctive and discrete tests to determine whether or not a transfer within one year before the date of filing a petition is fraudulent. Subsection (a)(1) of § 548 contains the "intent" test whereby the evidence must be scrutinized to discover whether the trustee has borne his burden of proof that the transferor-debtor acted with "actual intent to hinder, delay or defraud" his creditors. Subsection (a)(2)(A) and (B)(i) contains a second and alternative test which requires no intent but presumes a fraudulent transfer where conditions obtain that a transferor-debtor, insolvent on the date of the transfer, "received less than a reasonably equivalent value" for the interest transferred. Since it is conceded that William was insolvent on July 3, 1980, the disputed transfer must be held fraudulent and voidable under § 548 if William acted with the requisite intent, or if he received less than reasonably equivalent value for the interest transferred.

■ As to intent, the court finds that the circumstances of the instant transfer give rise to none of the implications employed by courts to conclude that fraud has occurred. See 4 Collier on Bankruptcy (15th ed.) ¶ 548.02[5] at 548–32 et seq. The statement of financial affairs attached to the Hulks' joint petition fully disclosed the transfers between them. William's transfer to Amelia arose because Amelia had previously transferred her interest to him upon the incorrect advice of a welfare department employee. It is obvious that William acted only as a titleholder for the convenience of Amelia and that Amelia was at all times the equitable or beneficial owner of the one-half interest in the property paid for by her contributions. There is no doubt that Amelia could have obtained restoration of title at any time. William executed the transfer of July 3, 1980 upon advice of counsel, and the acknowledged reason for so doing was to enable Amelia to claim a stat-

---

liabilities for each petitioner. This has led to the need for the court to make certain assumptions as hereinafter stated.

**5.** *Section 548. Fraudulent Transfers and Obligations.*

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer occurred or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . . .

utory exemption in her one-half interest in the property to which property she was beneficially entitled anyway. The trustee has not established the requisite actual intent demanded by § 548(a)(1). *Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823 (5th Cir. 1959), *cert. denied*, 362 U.S. 962, 80 S.Ct. 878, 4 L.Ed.2d 877 (1960); Cf. *In re White*, 221 F.Supp. 64 (N.D.Cal.1963).

With respect to the alternate basis for claiming a fraudulent transfer, when Amelia transferred her one-half interest in the property to William on April 18, 1979, she received no consideration. Amelia had a claim upon William at any time to require him to transfer title back to her without payment to him. Thus, it cannot be said that when William transferred a one-half interest in the property to Amelia on July 3, 1980, he received less than a reasonable equivalent value for the interest transferred. *Luper v. Ruhl*, 148 F.Supp. 888, 890 (S.D.Ohio 1956) (holding that where a bankrupt wife transferred a certain lot to her husband, the husband "being [already] the equitable owner [of the transferred property], it cannot be said that the lot was transferred to him without consideration"); *Mayo v. Pioneer Bank & Trust Co., supra.*

The court also concludes that the transfer does not constitute a preference under 11 U.S.C. § 547(b), inasmuch as the property transferred was not, in equity, the property of the debtor-transferor, William, and Amelia, the transferee, was not a creditor.[6] The true relationship between William and Amelia, with respect to the disputed transfer, is that between a trustee and a cestui que trust. *Ward v. Ward*, 59 Conn. 188, 22 A. 149 (1890). Transfers arising out of such a relationship do not give rise to preferences. *Benjamin v. Buell*, 268 F. 792 (7th Cir. 1920); *Ortlieb v. Baumer*, 6 F.Supp. 58 (S.D.N.Y.1934); *Malone v. Gimpel*, 151 F.Supp. 549 (N.D.N.Y.1957), *affirmed* 244 F.2d 954 (2d Cir. 1957).

■ A finding that the July 3, 1980 transfer of Amelia's half interest in the property back to her is neither fraudulent nor preferential is, however, not dispositive of the ultimate issue herein. Amelia received back the half interest encumbered by the aforementioned three attachments. The avoidance of these attachments is the purpose of the Hulks' joint complaint. The Hulks' claim that the liens of these attachments are void either because they impair their exemptions, or because they were recorded within 90 days prior to the filing of the Hulks' petition for relief. Because the Hulks' joint petition has schedules which do not separate the assets and liabilities of each, it appears the parties have assumed that William is entitled to claim his exemption against the Hulks' entire equity in the property.[7] This is not so. The purpose of a joint petition by a husband and wife is mainly to provide for ease of administra-

---

**6.** *Section 547(b).* Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

    (3) made while the debtor was insolvent;

    (4) made—

        (A) on or within 90 days before the date of the filing of the petition; or

        (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer

            (i) was an insider; and

            (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

    (5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

**7.** In their joint brief, at p. 4, the Hulks set forth their joint claim of exemption as follows:

"Total appraised value . . . . . . . . . . . . $61,000
Total amt. of mortgages . . . . . . . . . $49,900
Amount of equity . . . . . . . . . . . . . . $11,100
Less W. Hulk exemption . . . . . . . . . $ 7,900
                                    3,200"

They then assert that Amelia can claim her homestead exemption ($7,500.00) against the remaining equity of $3,200.00.

tion.[8] There has never been a court-ordered consolidation of the Hulks' two estates. At the time of recordation of each of the attachments sought to be avoided, (November 20, 1979, May 2, 1980, and June 11, 1980, respectively), William was the sole owner of record of the property. Connecticut law is clear that lienors are not subordinated to unrecorded equities of which they have no knowledge but may rely on record title. Conn.Gen.Stat. § 47–10; *Goldberg v. Parker*, 87 Conn. 99, 87 A. 555 (1913); *Second Bank of New Haven v. Dyer*, 121 Conn. 263, 184 A. 386 (1936). This being so, Amelia's half interest was subject to the existing attachment liens (and mortgages) when it was transferred back to her, and she can claim as exempt under § 522(d)(1) and (5) only as much of her half interest as was not encumbered. *Sampsell v. Straub*, 194 F.2d 228 (9th Cir. 1951), *cert. denied sub nom.; Straub v. Sampsell*, 343 U.S. 927, 72 S.Ct. 761, 96 L.Ed. 1338 (1952). *Hemsell v. Rabb*, 29 F.2d 914, 915 (5th Cir. 1929); *In re Porter*, 3 F.Supp. 582 (S.D.Fla.1933).

But to hold that Amelia may not avoid existing attachments on her interest in the property as impairing her exemptions does not mean that the liens of the attaching creditors acquired within 90 days of the petition are good as against William's trustee. In *First National Bank of Baltimore v. Staake*, 202 U.S. 141, 26 S.Ct. 580, 50 L.Ed. 967 (1906), the bankrupt sold his interest in certain property to a third party but a delay took place in the delivery and recording of the deed. During the period of delay, attachments were placed on the property. After the deed was recorded both the bankrupt and the third party purchaser filed bankruptcy petitions, all within four months of the attachment recordings. The trustee for the bankrupt sought to avoid the attachments as being made within four months and preserve them for the estate.

The Supreme Court affirmed the preservation of the attachments for the benefit of general creditors, over the objections of the attaching creditors, observing:

> To what extent liens obtained by prior judicial proceedings shall be recognized is a matter wholly within the discretion of Congress. It might have validated all such liens, even though obtained the day before the proceedings were instituted. It might probably have invalidated all such liens whenever obtained. It took a middle course, and invalidated all liens obtained through legal proceedings within four months prior to the filing of the petition, but at the same time preserved to the general body of creditors, as against third parties, (such as purchasers under an unrecorded deed,) such liens as attaching creditors had secured upon property which would have passed to the subsequent purchaser in case the attachment had not been levied. It is true that the attaching creditors are thereby deprived of the fruits of their diligency, but the same thing would have happened had the attachment been levied upon property to which the bankrupt had the whole and undisputed title, or of which he had made a fraudulent conveyance. As remarked by the District Judge, "In cases where the bankrupt makes a valid conveyance, the purpose of the law is worked out by preserving and enforcing the liens of the attaching creditors for the pro-rata benefit of all the creditors." *Id.* at 148, 26 S.Ct. at 583.

In terms of the proceeding at bar, this holding means that the attachments of Hospital of May 2, 1988, and USLC of June 11, 1980, which are good as to Amelia and her trustee, are void as to William's trustee, as they were gotten within 90 days of William's petition, and are preserved under 11 U.S.C. § 551 for the benefit of general

---

**8.** *Section 302. Joint Cases.*

(a) A joint case under a chapter of this title is commenced by the filing with the bankruptcy court of a single petition under such chapter by an individual that may be a debtor under such chapter and such individual's spouse. The commencement of a joint case under a chapter of this title constitutes an order for relief under such chapter.

(b) After the commencement of a joint case, the court shall determine the extent, if any, to which the debtors' estates shall be consolidated.

creditors of William's estate.[9] Similar results have been reached in cases where debtors acquire exempt property subject to a lien voidable in bankruptcy. The courts have held that the debtor acquired as exempt property only the equity in the land over and above the pre-existing although voidable lien and ordered the lien preserved for the benefit of the general creditors. *Sampsell v. Straub, supra; Hemsell v. Rabb, supra; In re Porter, supra.*

Nothing in the Bankruptcy Code that I have seen overrules the results of the pre-Code decisional law herein examined. Quite the opposite appears to be the case, since the trustee continues to be vested with all the powers of avoidance and recovery for the estate that he was accorded under former law, and in addition, § 551 of the Code renders *automatic* the preservation for the benefit of the estate of any transfer avoided under powers granted to the trustee.

Thus, I hold that the attachments of Hospital, recorded on May 2, 1980 and of USLC recorded June 11, 1980, while otherwise valid against Amelia's half interest in the property, are voidable by the trustee of William pursuant to § 547 as being transfers by William while insolvent within the proscribed 90-day period preceding the date of filing. As such, these attachments are automatically preserved under § 551 for the benefit of William's estate.[10] The attachment of Hospital of $1,400.00 recorded November 20, 1979, is not avoidable by William's trustee, inasmuch as it constitutes a transfer without the prescribed 90-day period. It is nonetheless avoidable by William as to his property interest under § 522(f) as an impairment of his exemption.

All of the foregoing leads to the following result. As to William, the value of his one-half interest in the property is $30,500.00. By subtracting one-half of the mortgages on the property, $24,950.00, he is left with an equity of $5,550.00. Since William is entitled to a homestead exemption of $7,500.00, the three attachments impair this equity, and as to his one-half interest, they are accordingly avoided. As to Amelia, she, in similar fashion, has a $5,550.00 equity in her half interest in the property after subtracting the mortgages. Her interest is and remains subject to the three attachments totaling $5,400.00, leaving her with an equity of only $150.00, to which her homestead exemption can apply. The attachments of Hospital dated May 2, 1980 in the amount of $2,000.00, and USLC dated June 11, 1980 in the amount of $2,000.00 on the interest of Amelia in the property are preserved for the estate of William.

It is

So ordered.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.

---

**9.** *Section 551. Automatic Preservation of Avoided Transfer.*

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

**10.** The trustee in his post-trial brief requested the court to avoid the attachments of Hospital and USLC made within 90 days of the petition "under the provisions of 11 U.S.C. § 547".