**In re A. Joseph MAGOSIN, Sr., Individually and t/a Chirosply and CPS, and Muriel E. Shotwell, Husband and Wife, Debtors.**

**Bankruptcy No. 86–01200S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 25, 1987.

James N. Gross, Philadelphia, Pa., for debtors.

Barbara R. Watkins, Norristown, Pa., for Meridian Bank.

Stephen Raslavich, Philadelphia, Pa., trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

Before us is a dispute between the Debtors and MERIDIAN BANK (hereinafter referred to as "the Bank"), one of fourteen Respondents named in a Motion by the Debtors to avoid judicial liens against their residential real estate, pursuant to 11 U.S.C. § 522(f)(1). The Bank presses two responses set forth in its Answer: (1) The Debtors should lose their homestead exemptions because of the alleged fraud of the Husband-Debtor in failing to list, as either property owned or property exempted on the Debtors' Schedules, certain equipment, which is or was allegedly collateral of the Bank; (2) The Debtors' exemptions "are less than the proceeds resulting from the sale of their residence," and hence that they may not avoid the Bank's liens because the liens allegedly do not impair the Debtors' exemptions in the premises.

▇▇▇▇ We hold that a contention that a debtor is guilty of fraud in claiming exemptions which is not proven to have any direct relationship to the avoidance of the liens in question is totally irrelevant to the determination that the liens may be avoided pursuant to 11 U.S.C. § 522(f)(1). Also, we hold that the steps to be followed in applying § 522(f)(1) are as follows:

1. Determine the value of the property on which a judicial lien is sought to be avoided.

2. Deduct the amount of all liens not to be avoided from (1).

3. Deduct the Debtors' allowable exemptions from (2).

4. Avoidance of all judicial liens results unless (3) is a positive figure.

5. If (3) does result in a positive figure, do not allow avoidance of liens, in order of priority, to that extent only.

Application of these principles causes us to reject both arguments of the Bank and hold that the Debtor may avoid the Bank's liens, pursuant to § 522(f)(1).

On April 1, 1987, contemplating a sale of their residential realty at 1511 Norristown Road, Upper Dublin Township, Montgomery County, Pennsylvania (hereinafter referred to as "the premises"), the Debtors filed both the Motion in issue and Amendments to Schedules A-2, A-3, and B-4 of their Chapter 7 bankruptcy schedules. On April 22, 1987, the Bank filed its Answer, and the matter came before us for a hearing on April 29, 1987, whereupon we ordered the parties to simultaneously file opening Briefs on May 11, 1987, and Reply Briefs on May 18, 1987, in support of their respective positions.

In its Brief, the Bank recites the following figures arising from a court-approved sale of the premises, which we will accept *arguendo*, as presumably the most advantageous to its position which the facts would support, in deciding this Motion:

| | |
|---|---|
| Sale Price | $167,500.00 |
| Net Proceeds after costs, payment of first mortgage and escrow for taxes | 49,252.97 |
| First lien—Judgment of the Bank | 24,147.31 |
| Second lien—Mortgage (Theresa Myers) | 41,540.00 |
| Third lien—Judgment (Boxwood Partnership) | 3,233.07 |
| Fourth lien—Judgment of the Bank | 1,490.90 |

The operative statutory provision, 11 U.S.C. § 522(f)(1), provides as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) A judicial lien; ...

The Bank claims that we should not permit the Debtors to avoid its judicial liens on the premises because of the alleged fraud of the Husband-Debtor in failing to list or claim exemptions in certain equipment in which it allegedly has a security interest, and thus it concludes that the Husband-Debtor is concealing same. We fail to discern intuitively, and the Bank has not un-

dertaken to argue, much less prove on the record, what possible connection this alleged fraud has with the issue of the liens in question, other than the fact that both relate, in some general fashion, to the issue of "exemptions."

Not surprisingly, all of the cases known to us arising under the Code reject arguments similar to that of the Bank. *See In re Somerville*, Bankr. No. 83–04881K (Bankr.E.D.Pa., Opinion filed Jan. 10, 1986) (unreported, per KING, J.) (Debtor allegedly failed to list all of his assets on schedules; lien of creditor nevertheless avoided);[1] *In re Nesset*, 33 B.R. 326, 327 (Bankr. D.N.M.1983) (Debtors allowed to avoid liens on property which they allegedly fraudulently transferred to a trust prior to bankruptcy filing); *In re Haupt*, 16 B.R. 118 (Bankr.E.D.Pa.1981) (per TWARDOW-SKI, J.) (Creditor claimed debtor engaged in fraud in making loan in which lien sought to be avoided was obtained; fraud held irrelevant to lien avoidance); and *In re Krajci*, 7 B.R. 242, 244 (Bankr.E.D.Pa. 1980) (per GOLDHABER, CH. J.), *aff'd on other grounds*, 16 B.R. 464 (E.D.Pa.1981) (Debtor alleged to have fraudulently induced creditor to substitute avoidable lien for unavoidable mortgage; lien nevertheless avoided). Furthermore, assuming *arguendo* that fraud of the Debtors is or could be a defense to a § 522(f)(1) motion, the Bank has made only *allegations* of omissions on the Debtors' Schedules, which is a far cry from producing the requisite "clear and convincing" evidence by which fraud must be proven. *See, e.g., In re Woods*, 66 B.R. 984, 988 (Bankr.E.D.Pa. 1986); and *In re Woerner*, 66 B.R. 964, 972 (Bankr.E.D.Pa.1986), *aff'd*, C.A. No. 86–7324 (E.D.Pa., Order dated April 28, 1987).

The Bank attempts to avoid the force of these cases by citing three cases decided under the Bankruptcy Act. Not surprisingly, none of these cases involved a lien avoidance, as no such right was provided to Debtors under the Act. Each of these cases were simply challenges to the Debtors' claims of exemptions, in which the courts held that the respective debtors' fraud curtailed their respective rights to claim exemptions. *In re Rosenberg*, 7 F.2d 768 (W.D.Pa.1925); *In re Rice*, 164 F. 539 (E.D.Pa.1908); and *In re Alex*, 141 F. 483 (E.D.Pa.1905). There is no question that a creditor can raise the issue of fraud in objecting to exemptions, as these cases hold. *See* 3 COLLIER ON BANKRUPTCY, ¶ 522.08, at 522–31 to 522–42 (2d ed. 1987). However, that is not the relevant issue here.

The Bank also cites a decision of former Chief Judge Goldhaber, *In re Laird*, 6 B.R. 273, 277 (Bankr.E.D.Pa.1980), where, in dictum in a case wherein he ultimately granted the debtor's claimed exemptions in dispute, Judge Goldhaber states that "certain fraudulent conduct" could prevent a debtor from claiming exemptions. As we would be obliged to find due to the absence of anything but unproven accusations levelled against the Debtors here, Judge Goldhaber found insufficient evidence of fraud in *Laird* to deny relief to the debtor there. More significantly, however, Judge Goldhaber was merely addressing the right of creditors to challenge claims of exemptions, as do the Act cases and the passage in Collier cited in the foregoing paragraph. He was not holding that objections to claims of exemptions could be raised in defending a motion to avoid a lien. Moreover, when Judge Goldhaber's later decision in *Krajci* directly addressed that issue, he held that the exclusive means by which a creditor could challenge exemptions claimed is by an objection to the claim of exemption or a complaint challenging discharge or dischargeability. *Accord, Somerville, supra.*

Further, we believe that Judge Goldhaber's statement that "certain fraudulent conduct" could taint an exemption related to fraud which has a direct connection with the exemption challenged. For instance, if

---

1. We note that the same creditor who unsuccessfuly raised the objection to lien avoidance in this case ultimately prevailed in a Complaint challenging the Debtor's discharge under various sections of § 727(a). *In re Somerville, Randolph v. Somerville*, 73 B.R. 826 (Bankr.E.D.Pa., 1987). This sequence of decisions suggests that the recourse available to the Bank, if it claimed pervasive fraud on the Debtor's part in concealing assets, was a Complaint under § 727(a).

the Debtors here fraudulently deflated the value of their home or inflated the amounts of unavoidable liens, the Bank certainly could raise these issues, whether proving fraud or not, as defenses to the instant lien avoidance Motion.

■ However, when, like here, the effect of a debtor's alleged fraud in claiming exemptions is alleged to have at best an indirect impact upon the lien avoidance in issue, we believe that the objecting party must file a timely and specific objection to the claim of exemption, and then prove, at the hearing, by presenting evidence of same, that the improperly claimed exemption indeed does have an impact on the lien-avoidance issue.

■ Thus, at the hearing here, we indicated, consistent with the reasoning in *Krajci*, that the Bank, if it wished to contest the Debtor's failure to exempt its alleged collateral, initially should have challenged the Debtors' exemptions with a timely objection, pursuant to 11 U.S.C. § 522(*l*), which provides that "[u]nless a party in interest objects, the property claimed on the list *is* exempt (emphasis added)." *See Woerner, supra,* 66 B.R. at 974. Bankruptcy Rule 4003(b) requires that such an objection be filed "within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list. . . ."

■ The Bank contended, at the hearing, that a purported lack of notice of the meeting of creditors excused its compliance with the time structures of Rule 4003(b). However, a similar argument was rejected by the court in *In re Hahn,* 60 B.R. 69 (Bankr. D.Minn.1985). Appropriate here is the *Hahn* court's observation that the debtor there filed an amendment to Schedule B–4 after the objecting creditor was well aware of the bankruptcy filing and, despite this triggering of a new 30–day period, the objecting creditor nevertheless still failed to file the requisite objection. 60 B.R. at 74. Here, the Debtors filed an amendment to Schedule B–4 as late as April 1, 1987, and the Bank, although this action triggered a new period to file objections through May 1, 1987, nevertheless failed to file any such objections. At this point, any attempts by the Bank to enlarge the time to object would be barred by Bankruptcy Rule 9006(b)(3). Thus, it appears that the Bank is now foreclosed from objecting to the Debtors' exemptions.

■ In any event, the Bank has not undertaken to prove the requisite connection between the failure of the Debtor to list or exempt its alleged collateral and the Debtors' attempt to avoid its liens on the premises, just as it has not undertaken to prove any fraud on the part of the Debtors. Thus, we are compelled to reject any contention by the Bank that any alleged fraud of the Debtors is relevant to the lien avoidance motion in issue.

■ The second issue is whether, under a straight-forward application of § 522(f)(1), the Bank's lien may be avoided. On this point, the Bank concedes that, per the reasoning of the Court of Appeals in *In re Simonson,* 758 F.2d 103 (3d Cir.1985), there is a balance of $7,712.97 which is not impaired by the unavoidable Myers second mortgage, and hence could be avoided by the Debtors. However, the Bank argues that, since it has liens totalling over $16,-000.00, it, rather than the Debtors, should receive the balance of the proceeds.

It is not totally clear what method or formula the Bank posits should be utilized in effecting lien avoidances per 11 U.S.C. § 522(f)(1). We have, it will be recalled, set forth the steps which we believe must be followed in applying this Code section at page 547 *supra.* Following those steps we conclude as follows:

1. Determine the value of the premises—Given as $167,500.00.

2. Deduct the amount of liens not to be avoided—This is the Net Proceeds less the amount of the unavoidable Myers mortgage or $7,712.97.

3. Deduct the Debtors' exemptions—Clearly, the exemptions exceed the $7,712.97 figure.

4. Allow avoidance of all liens unless (3) is a positive figure—It is not a positive

figure. Therefore, all liens, including those of the Bank, may be avoided.[2]

The Bank appears to argue initially that, since its liens are larger than the Debtors' exemption, the amount by which its liens exceed the exemption should be unavoidable and this fact should allow it to retain the proceeds in preference to the Debtors. Secondly, it claims that the fact that its lien "stands prior to" the unavoidable mortgage is significant. However, neither argument has any basis in law or reason. *Any* lien which impairs a debtor's exemption is avoidable, no matter what the amount of the lien is in reference to the amount of the debtor's exemption, or where the avoidable lien stands in reference to an unavoidable mortgage. The reasoning of the Bank appears to be that, if a lien is so far junior in time or nature to other liens that the extent of the actual value of its security interest in property of the debtor's estate could be reduced or wiped out, the lien should not be avoidable pursuant to § 522(f)(1). However, we cannot agree that such an invalid or partially valid lien should be preferred to the Debtors' right to retain an equity in their premises in beginning their post-bankruptcy "fresh start."[3] We also believe that the presence of a junior mortgage has no impact on the impairment of the Debtors' interest by the Bank's liens.

The vast majority of cases which have considered the issue have concluded, as we have in devising our formula for applying § 522(f)(1), that the debtor has an interest in property for purposes of § 522(f)(1) "even when the creditor's lien exceeds the amount of the security." 3 COLLIER *supra*, ¶ 522.29, at 522–83, n. a and cases cited therein. We also note that decisions of four other Pennsylvania bankruptcy judges in situations where a judgment lien was similarly prior to an unavoidable mortgage, have held that the judgment lien can be avoided. *In re Bickleman*, 71 B.R. 135, 137 (Bankr.E.D.Pa.1987) (treatment of Exeter Associates, Inc. lien) (per TWARDOWSKI, CH. J.); *In re Reti*, Bankr. No. 85–03772G (Bankr.E.D.Pa., Memo. & Order filed Jan. 28, 1987) (Unreported, per FOX, J.); *In re Martz*, 57 B.R. 345 (Bankr.W.D. Pa.1986) (Per MARKOVITZ, J.); and *In re Losieniecki*, 17 B.R. 136 (Bankr.W.D.Pa. 1981) (per COSETTI, CH. J.).

We therefore conclude that the Bank's liens impair the Debtors' exemptions. Thus, the entire balance of the sale proceeds can be exempted by the Debtors. We shall therefore enter an accompanying Order allowing the Debtors to avoid both of the Bank's judicial liens in their entirety.

## ORDER

AND NOW, this 25th day of June, 1987, after hearing argument on April 29, 1987, from Counsel on that portion of the Debtors' Motion to Avoid Judicial Liens Impairing Debtors' Homestead Exemptions per-

---

**2.** We would observe that we question some aspects of the *Simonson* majority Opinion, as does the dissenting Opinion of Judge Becker in that case. We believe that Congress, in enacting § 522(f)(1), meant to maximize the "fresh start" principle, *see, e.g., Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), and that the majority's reading, for example, virtually strips § 522(i)(2) of any meaning. Thus, many courts have concluded, contrary to the *Simonson* majority, that a debtor may avoid mortgages junior to avoidable judgment liens. *See e.g., In re Green,* 64 B.R. 462 (Bankr.S.D.Ind.1986); *In re Bernstein,* 62 B.R. 545, 550 (Bankr.D.Vt.1986); *In re Braddon,* 57 B.R. 677, 678–80 (Bankr.W.D.N.Y.1986); *In re Rasmussen,* 54 B.R. 965, 972 n. 14 (Bankr.W.D. Mo.1985); and *In re Losieniecki,* 17 B.R. 136 (Bankr.W.D.Pa.1981) (per COSETTI, CH. J.)

In *Simonson,* unlike here, the total amount of the unavoidable mortgages against the property exceeded the sale proceeds. Thus, the majority concluded, contrary to the argument of the debtors there that they should be accorded their exemption prior to a second mortgage junior to avoidable liens, that the debtors there "had no interest in the property to which an exemption could attach." 758 F.2d at 105. Here, however, the Debtors clearly do have an equity in excess of the total unavoidable mortgages against the premises to which their § 522(d)(1) exemption could attach.

**3.** Practically, we observe that invalid or partially valid liens can be "avoided" in any event by a determination pursuant to 11 U.S.C. §§ 502(a), 506(a). *See e.g., In re Jablonski,* 70 B.R. 381, 385–86 (Bankr.E.D.Pa.1987); and *In re Everett,* 48 B.R. 618 (Bankr.E.D.Pa.1984) (per GOLDHABER, CH. J.)

taining to Meridian Bank (hereinafter referred to as "Meridian") and the Answer thereto by Meridian and reviewing the Briefs of the parties submitted subsequently thereto, it is hereby ORDERED and DECREED as follows:

1. The Debtors' Motion is GRANTED, and the judicial liens of Meridian and/or its precedessors, successors, or assignors which arose from judgments obtained against the Debtors at Case Nos. 85–00449 and 85–13239, in the Court of Common Pleas of Montgomery County are hereby AVOIDED in their entirety.

2. Meridian shall take all necessary steps to release the said liens and remove them from the pertinent Montgomery County court records within ten (10) days from the date of this Order.