**In re Eric CHANDLER, Debtor.**

**In re James CHANDLER, Debtor.**

**Bankruptcy Nos. 86–02697G, 86–02698K.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 11, 1987.

As Amended Sept. 14, 1987.

See also, 76 B.R. 460.

**514**

Jack K. Miller, Philadelphia, Pa., for debtors.

Martin N. Ghen, Doylestown, Pa., for 1st Merc.

Mary B. Seiverling, Harrisburg, Pa., Asst. Counsel for Dept. of Public Welfare.

Edward Sparkman, Philadelphia, Pa., standing Chapter 13 trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION AND PROCEDURAL HISTORY

For the second time, we are presented with contested Motions pursuant to 11 U.S.C. § 522(f)(1) to avoid certain judicial liens by the Debtors in the above-entitled cases, brothers who are co-owners of a premises situated at 5904 West Chew Avenue, Philadelphia, Pennsylvania 19138 (hereinafter referred to as "the premises").

The matters presently before us raise two issues relating to § 522(f)(1) Motions which we did not address in either our previous Motions involving these same Debtors or our initial Opinion on this topic, *In re Magosin*, 75 B.R. 545 (Bankr.E.D.Pa., 1987). These issues and their respective resolutions are as follows: (1) What is the significant time at which we should measure a debtor's right to claim exemptions and the value of the allegedly exempt property? We hold, consistent with an express Code provision, § 522(a)(2), and all known authority, that the date of filing is the significant time for measurement of all factors relevant to exemptions. (2) May a debtor avoid a lien which is already against the property when the debtor obtains it? Contrary to some authority, in which the principle is established in much less compelling factual settings than are presented here, we hold that a debtor is not barred from avoiding a lien in such circumstances by any language in the applicable Code Provision § 522(f)(1), and that the circumstances presented here authorize avoidance despite the fact that the lien was present when the Debtors, who had been beneficial owners when the lien attached, became legal owners thereafter. We therefore sustain the Debtors' Motions.

On July 24, 1987, in a Memorandum Opinion, we ruled that the Debtors could avoid $3,000.00 out of three liens totalling $8,070.00 against the premises held by the Commonwealth of Pennsylvania, Department of Public Welfare (hereinafter referred to as "DPW"). Here, we consider Motions to avoid the lien of the other judgment creditor mentioned in that Opinion, First Mercantile Consumer Discount Co. (hereinafter referred to as "1st Merc."). We reiterate that, to avoid duplication and potential conflict, the § 522(f)(1) Motions relating to DPW and 1st Merc. in both of these cases were assigned to the undersigned, but, in all other respects, Eric's bankruptcy case is and remains assigned to the Honorable Bruce Fox.

The underlying bankruptcy cases were filed simultaneously on May 30, 1986. Both Debtors listed the premises as their residence on their Petitions. The Debtors delayed in filing their respective Chapter 13 Statements, Plans, and other necessary papers until September 16, 1986. On December 16, 1986, both filed Motions to avoid the 1st Merc. lien as to their respective interests in the premises. On April 10, 1987, both Debtors also filed Objections to the Proofs of Claim of 1st Merc. These Objections were consolidated for disposition with the lien avoidance Motions relating to 1st Merc.

Ultimately, the parties agreed that the resolution of the Motions to avoid the DPW liens should precede disposition of the matters involving 1st Merc. After our resolution of the DPW liens' position on July 24, 1987, these matters came before us for a hearing on August 11, 1987.[1] In contrast

---

1. The Debtors made only a half-hearted attempt to disprove the validity of 1st Merc.'s Proofs of Claim, focusing on the allegedly unconscionable sum requested as a deficiency after a repossession of a motor vehicle purchased by their mother, Thelma L. Chandler, and did not address the Objections at all in their Brief. Although we question whether these Claims, which appear to be solely against their mother, are valid against the Debtors, we note that the

to the record in the DPW matters, the parties here were unable to reach a stipulation of facts. Testimony was therefore adduced from Gerald Cassel, a real estate broker, and James Chandler on behalf of the Debtors. 1st Merc. provided no testimony, but the parties stipulated that an appraisal done by Robert N. Manoff on behalf of 1st Merc. could be admitted into evidence.

At the close of the hearing, the parties were given permission to simultaneously file Briefs on or before August 24, 1987. Because we must make several significant factual determinations, our Opinion is presented in the form of Findings of Fact, Conclusions of Law, and a Discussion.

## B. FINDINGS OF FACT

1. 1st Merc's witness, Robert N. Manoff appraised the property at $26,000.00 as of March 19, 1987. However, 1st Merc.'s failure to call Mr. Manoff as a witness and our consequent inability to be apprised of his credentials, obtain any supporting testimony regarding his selection of alleged comparable premises, or weigh his credibility, render his appraisal of little weight. Specifically, this appraisal does not undermine the accuracy of the appraisal of the Debtors' expert witness, Gerald Cassel, who testified that, due to the poor condition of the premises, it was worth $19,500.00 as of July 18, 1986. We therefore find that, as of May 30, 1986, the value of the premises was no greater than $19,500.00.

2. On June 30, 1964, the Debtors' mother, Thelma L. Chandler, obtained title to the premises as trustee for the Debtors.

3. On September 30, 1982, Thelma L. Chandler deeded full legal title of the premises to the Debtors.

4. The premises is subject to a first mortgage held by United Brokers Mortgage Co. in the principal amount of $1,500.00.

5. DPW had three judgment liens, a full chronological history of which is set forth in our previous Memorandum Opinion, each in the amount of $2,690.00, arising from Court of Common Pleas of Philadelphia County, March term, 1971, no. 3661, entered March 22, 1971 ("judgment no. 3661"); April term, 1975, no. 7184 ("judgment no. 7184"); April term, 1975, no. 7185 ("judgment no 7185").

6. 1st Merc. holds a judgment lien in the amount of at least $8,607.49, entered in the Court of Common Pleas of Philadelphia County, November term, 1973, no. 3418, on March 14, 1980.

7. In our previous Memorandum Opinion, finding that the Debtors' exemptions were $7,500.00 apiece, we held that judgment no. 7184 could not be avoided, judgment no. 7185 could be avoided only to the extent of $310.00, the parties there having stipulated that judgment no. 3661, due to an error in revival, could be avoided entirely.

8. Both Debtors resided in the property on May 30, 1986. James moved out of the premises in August, 1986, and returned to reside there on or about August 1, 1987. Eric moved out some time late in 1986 and has never returned to reside there.

9. Although Thelma L. Chandler deeded the legal title to the premises to her sons, previous to that time its beneficial owners, without receiving consideration, this transaction was not shown to be in any way fraudulent or for any illegal or improper purpose working to the unfair detriment of creditors. It was, moreover, only a transfer of legal title of the premises to parties who were already its beneficial or equitable owners.

## C. CONCLUSIONS OF LAW

1. The value of the premises and the measure of the facts necessary to be made to determine the Debtors' rights pursuant to 11 U.S.C. § 522 must be determined as

only goal of the Debtors, per the proposed Orders attached to the Objections, seems to be to reduce these Claims to unsecured status. Since the Debtors have failed to meet their burden to offset the *prima facie* validity of 1st Merc.'s Claims in the amount of 1st Merc.'s judgment of $8,607.49, in our Order we shall merely re-classify these Claims and hold that they are unsecured claims in the amount of $8,607.49 against the Debtors, jointly and severally.

of the time that the Debtors filed their bankruptcy Petitions, e.g., May 30, 1986.

■ 2. Since the Debtors both resided in the premises at the time of filing, they both are entitled to claim homestead exemptions of at least $7,500.00 in the premises.

3. There is no restriction in 11 U.S.C. § 522(f)(1) confining lien avoidance to only liens imposed after the debtor acquires a premises.

4. Since the Debtors were already beneficial owners of the premises when their mother deeded it to them, and there was no element of fraud established in the transaction, they may each avoid the lien in question, even though the lien was in place when they obtained legal title to the premises.

■ 5. The fact that there may be an unavoidable mortgage on the premises junior to 1st Merc.'s lien is not an impediment to avoidance of 1st Merc.'s lien.

6. The Debtors are entitled to avoidance of 1st Merc.'s lien under the formula set forth in *Magosin, supra,* 75 B.R. at 547, and 1st Merc. is entitled to merely an unsecured claim of $8,607.49 against both of the Debtors, jointly and severally.[2]

## D. DISCUSSION

### 1. INTRODUCTION

Resolution of this matter requires us to interpret several aspects of 11 U.S.C. § 522(f)(1), which provides as follows:

> (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; . . .

As both the majority and Judge Becker, dissenting, observe in their respective Opinions in *In re Simonson,* 758 F.2d 103, 106 (3d Cir.1985), there is a degree of "opaqueness" in § 522(f)(1) which requires courts to fill the interstices of this statutory provision in applying it to specific factual circumstances.

### 2. THE SIGNIFICANT TIME FOR DETERMINING THE DEBTOR'S ENTITLEMENT TO EXEMPTIONS AND THE VALUE OF PROPERTY FOR PURPOSES OF § 522(f)(1) IS THE DATE OF THE FILING OF THE BANKRUPTCY PETITION

The first issue which arises here is one of timing. The statutory provision itself, § 522(f)(1), is entirely silent on *when* the court is to determine the debtor's interest in the premises on which a lien attaches and the value of the premises. However, on this subject, we have direct guidance from our venerable precedessor in this court, former Chief Judge Emil F. Goldhaber. In *In re Rappaport,* 19 B.R. 971, 973 (Bankr.E.D.Pa.1982), following the analysis of Chief Judge Cosetti of the Western District of Pennsylvania in *In re Tanner,* 14 B.R. 933, 936–37 (Bankr.W.D. Pa.1981), Judge Goldhaber held that "whether a lien is avoidable under § 522(f) of the Code should be determined as of the date of the filing of the debtor's petition." This ruling has been uniformly followed elsewhere. *See, e.g., In re Grube,* 54 B.R. 655, 657 (Bankr.D.N.J.1985); and *In re Kalli,* 34 B.R. 191, 193 (Bankr.D.Vt.1983).

Moreover, this issue is arguably addressed directly elsewhere in § 522, which provides, at § 522(a)(2), that " 'value' means fair market value as of the date of the filing of the petition" with respect to property acquired prior to the filing of the petition.

This ruling resolves several of the disputed issues in this case, i.e., whether the Debtors are each entitled to a full $7,500.00 exemption in the premises, per § 522(d)(1), and as of what date the premises should be valued. The clear and rebutted testimony of James Chandler was that both he and his brother Eric "used" the premises "as a residence" as of the date of filing, May 30, 1986. The fact that each subsequently moved from the premises, even prior to the

---

**2.** See page 514 n. 1 *supra.*

date of the filing of their respective Chapter 13 Statements and Schedules, is completely irrelevant. We reject 1st Merc.'s inaccurate statement that there is any evidence to support any conclusion that either of the Debtors did not reside in the property at the date of filing.

Not only the Debtors' rights to exemptions pursuant to § 522(d)(1), but also the value of the premises must be determined as of the date of filing. Therefore, the valuation appraisal and testimony of Mr. Cassel, especially in light of the testimony adduced on cross-examination that property values were and are increasing, is temporarily more relevant than the appraisal of Mr. Manoff. The former was presented as of July 18, 1986, itself a date subsequent to the pertinent date, May 30, 1986. Mr. Manoff's figures were presented as of March 19, 1987.

There is one other important distinction which causes us to accept the testimony and appraisal of Mr. Cassel as more accurate, relative to that of Mr. Manoff, *i.e.*, the failure of Mr. Manoff to appear and testify. As we indicated in *In re Blakey, Blakey v. Pierce*, 76 B.R. 465, 472 (Bankr.E.D.Pa., 1987), comparable sales data is only as useful as the determination of with what the subject property has been compared. Analysis of the condition of the premises and the elements taken into consideration by the appraiser, including an analysis of the neighborhood, are elements which are very important in our determination of the relative weight to be given to appraisals of property by real estate brokers. *See In re Caster, Caster v. United States*, 77 B.R. 8, 10, 14–15 (Bankr.E.D.Pa., 1987); and *Blakey, supra*, 76 B.R. at 467, 472. Without live testimony from Mr. Manoff, which was admitted into the record at all only by Stipulation of the Debtors' Counsel, we had nothing from him but his bare allegedly "comparative sales" data. His credentials, the degree of care which he utilized in performing his inspection, and the weight which he gave to the condition of the premises, are completely unknown. Meanwhile, the experience, thoroughness, and evaluative process engaged in by Mr. Cassel, as supported by his testimony, seemed totally adequate. We therefore accept his testimony and conclude that the fair market value of the premises, as of May 30, 1986, was no more than $19,500.00.[3]

3. THE FACT THAT THE DEBTORS BECAME LEGAL OWNERS OF THE PREMISES SUBSEQUENT TO THE FIXING OF THE LIEN IN ISSUE DOES NOT PRECLUDE THEM FROM INVOKING § 522(f)(1) AS TO THIS LIEN

The most difficult issue presented by the case is whether the fact that the liens were placed against the premises while the Debtors were beneficial owners and prior to their becoming legal owners, by means of the deed from their mother on September 30, 1982, bars them from invoking 11 U.S.C. § 522(f)(1) as to the premises.[4] 1st Merc. cites to several cases which appear to uniformly hold that, when a lien attaches to property before a debtor acquires it, the debtor cannot invoke § 522(f)(1) to avoid the lien. *In re Fiore*, 27 B.R. 48, 49–50 (Bankr.D.Conn.1983); *In re McCormick*, 18 B.R. 911, 913–14 (Bankr.W.D.Pa.1982) (per COSETTI, CH. J.), *aff'd*, 22 B.R. 997 (W.D.Pa. 1982);[5] *In re Stephens*, 15 B.R. 485, 486 (Bankr.W.D.N.C.1981); *In re Scott*, 12 B.R. 613, 615–17 (Bankr.W.D. Okla.1981); and *In re Hulk*, 8 B.R. 444, 449 (Bankr.D.Conn.1981).

We believe that all of these cases are significantly factually distinguishable from the instant matter, and we believe that their reasoning is questionable. *Scott* and several cases which follow it involved debtors who attempted to avoid liens consensually given to their respective spouses as part and parcel of a conveyance of the

---

3. We also observe that DPW stipulated to this valuation figure in the determination of the validity of its liens.

4. We note that DPW also did not raise this issue in its defense of the Debtors' 522(f)(1) Motions.

5. We note that the District Court did not consider the issue in question here in its Opinion on appeal.

spouse's interest to them in a property settlement. *See also, e.g., In re Hart,* 50 B.R. 956, 960–62 (Bankr.D.Nev.1985); and *In re Saxon,* 51 B.R. 246, 247–49 (Bankr.S. D.Ind.1983). The other cases so holding, of which *Fiore, McCormick, Stephens,* and *Hulk* are representative, involve debtors who the respective courts found made pre-filing conveyances with the express purpose of inequitably benefiting themselves at the expense of creditors. Thus, in *McCormick,* the debtor is confronted with a claim that a transfer from her husband seven days before the bankruptcy filing was fraudulent. 18 B.R. at 913. In *Stephens,* the court states as follows:

> The fruits of the debtor's fraud have come home to rest, and such rest should go undisturbed by a court of equity. He sought to cheat and got cheated, and must now know that he set out to cheat and deceive, a tangled web did he weave, thereby cancelling his authority to benefit from Section 522(f). 15 B.R. at 486.[6]

Furthermore, although *Hulk* is often cited for this principle, the court there does not discuss § 522(f) except in passing. *Fiore* does not involve this issue at all, but rather attributes significance to the existence of a mortgage junior to the judgment lien sought to be avoided, an issue addressed by us briefly hereinafter, at pages 519–520 *infra.*

Here, there is no element of fraud suggested much less proven, in the transfer of legal title of the premises by the Debtors' mother to them on September 30, 1982. Since the transfer occurred almost four years prior to the bankruptcy filing, it is inconceivable that the transfer was effected with a mind to gain any unfair advantage over the creditors of the Debtors in a bankruptcy.

There is also no element of the lien's here being consensual, as in the domestic property-settlement cases. *Compare Simonson, supra,* 758 F.2d at 105 ("Section 522(f)(1) permits avoidance of judicial liens, which are by nature nonconsensual"). *But*

*see Gardner v. Commonwealth of Pa., Dep't. of Public Welfare,* 685 F.2d 106 (3d Cir.1982) *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982) (following *Ashe, infra,* welfare lien obtained by confessed judgment is avoidable under 522(f)(1)); *In re Ashe,* 669 F.2d 105, 108–09 (3d Cir.), *vacated,* 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982), *reinstated,* 712 F.2d 864 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984) (fact that confessed judgment is arguably consensual does not bar invocation of § 522(f)(1)). Clearly, the attachment of the lien here was not, as in those cases, an element of the transfer whereby the Debtors acquired title to the premises.

Further, we disagree with the reasoning advanced by *McCormick, Hart, Saxon,* and *Scott,* which is that a brief excerpts of legislative history gleaned from the House Report accompanying the 1978 Bankruptcy Code justify reading into § 522(f)(1) a prerequisite that is absent from its text, i.e., a requirement that the lien be "fixed" upon the debtor's property subsequent to the debtor's acquisition of the property to be subject thereto. The pertinent passages in the House Report cited are as follows:

> In addition, the bill gives the debtor certain rights not available under current law with respect to exempt property. The debtor may void any judicial lien on exempt property, and any nonpurchase money security interest in certain exempt property such as household goods. The first right allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions.
>
> .     .     .     .     .
>
> Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The

---

**6.** As we pointed out in *Magosin, supra,* 75 B.R. at 549, proof of a fraud which has a direct connection with the exemption challenged in a

§ 522(f)(1) defense may serve as a basis for denial of such a Motion.

debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions. H.R.REP. No. 595, 95th Cong., 1st Sess. 126–27, 362 (1977), *reprinted in* 2 APP. COLLIER ON BANKRUPTCY (15th ed. 1987).

Admittedly, the initial passage expresses concern with creditors who race into the courthouse to obtain judgment liens "shortly before bankruptcy." However, liens obtained within ninety (90) days of a bankruptcy filing can be otherwise avoided under 11 U.S.C. § 547(b). *See, e.g., In re Proffitt Construction Co.*, 73 B.R. 288 (Bankr.D.Kan.1987). Furthermore, there is no suggestion in any of the cases cited at pages 517–518, *supra*, that a lien which is fixed upon the debtor's exempt property a *long* period before bankruptcy is exempted from avoidance simply because of the duration between the fixing and the bankruptcy filing. Conversely, a transfer in which the lien attaches "shortly before" bankruptcy can clearly occur even when the lien predates the debtor's acquisition of the property.

We believe that a more significant principle may be deduced from the second passage in the House Report. The significance of this passage is well-noted by Judge Becker in his *Simonson* dissent, when he states that "[t]he intent of Congress in enacting section 522(f) was to provide debtors ... with a 'fresh start,' including some equity in a residence, upon conclusion of the bankruptcy proceedings." 758 F.2d at 107. *Accord, Magosin, supra*, 75 B.R. at 550 n. 2; and *Fiore, supra*, 27 B.R. at 49. We fail to see how reading a requirement for invocation of § 522(f)(1) which is not there, i.e., that the acquisition of the property must precede the fixing of the lien, serves this overriding purpose of § 522(f)(1). We therefore fail to give any credence to the hypothesis that the *McCor-*

*mick* result follows from the pertinent legislative history.

Finally, we note that the facts here contain an added element favoring the rights of the particular Debtors here to invoke § 522(f)(1). The Debtors had a beneficial interest in the premises at all times since their mother acquired it in 1964, long prior to the fixing of the liens in issue. As per the holding in *In re Nesset*, 33 B.R. 326, 327 (Bankr.D.N.M.1983), this beneficial interest may have been sufficient, in itself, to allow the Debtors to avoid the lien in issue. *Cf. In re Hops*, 77 B.R. 470 (Bankr.E.D. Pa.1987) (lien against one spouse may constitute an avoidable lien against entireties' property); *In re Desrosiers*, 49 B.R. 132 (Bankr.D.N. H.1985) (lien obtained by judgment creditor under sheriff's deed is avoidable). *But cf. In re Mills*, 41 B.R. 849 (Bankr.W.D.Pa. 1984) (Debtors who are only trustees of property of which their children are the beneficiaries cannot invoke § 522(f)(1)).

Therefore, we conclude that the fact that the Debtors acquired legal title to the premises with 1st Merc.'s lien already intact does not prevent them from invoking § 522(f)(1) to avoid 1st Merc.'s lien.

4. THE EXISTENCE OF AN UNAVOIDABLE MORTGAGE JUNIOR TO THE LIEN IN ISSUE DOES NOT AFFECT THE RIGHT OF THE DEBTORS TO AVOID THE LIEN PURSUANT TO § 522(f)(1)

1st Merc. raises one other issue. It contends that we erred in not taking judicial notice of a junior mortgage recorded against the property in the Office of the Recorder of Deeds of the County of Philadelphia and not admitting into evidence a judgment search by 1st Merc.'s counsel, over the objections of the Debtors' counsel as to admission of each, and that the existence of such a presumably unavoidable junior mortgage may have precluded the avoidance of 1st Merc.'s lien.[7] Putting aside the evidentiary questions, we expressly held, in *Magosin, supra*, 75 B.R. at

7. We note that DPW did not raise this issue, either.

550, that the presence of a junior mortgage has no impact on the avoidance of a judgment lien. While we acknowledge the existence of some authority to the contrary, we note that our holding in *Magosin* is supported by decisions of Chief Judge Twardowski and Judge Fox of this Court, as well as decisions by both bankruptcy judges presently sitting in Pittsburgh. *See In re Bickleman*, 71 B.R. 135, 137 (Bankr. E.D.Pa.1987) (treatment of Exeter Associates, Inc. lien) (per TWARDOWSKI, CH. J.); *In re Reti*, Bankr. No. 85–03772G (Bankr.E.D.Pa., Memo & Order filed Jan. 28, 1987) (Unreported, per FOX, J.); *In re Martz*, 57 B.R. 345 (Bankr.W.D.Pa.1986) (per MARKOVITZ, J.); and *In re Losieniecki*, 17 B.R. 136 (Bankr.W.D.Pa.1981) (per COSETTI, CH. J.). As we continue to believe that this holding in *Magosin* best serves the overriding Congressional policy of providing the most comprehensive possible "fresh start" to a debtor, we adhere to that ruling in *Magosin*.

We also believe that our evidentiary rulings were correct. We believe that we have the discretion to decide whether to judicially notice proceedings in other courts. *See M/V American Queen v. San Diego Marine Construction Co.*, 708 F.2d 1483, 1491 (9th Cir.1983) (generally, a court may not take judicial notice of proceedings in another case); *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 510 n. 38 (4th Cir.1977) (general rule is that a court will not travel outside of the record to take notice of proceedings in another court); and *Pennwalt Corp. v. Horton Co.*, 582 F.Supp. 438, 441 (E.D.Pa.1984) (court refuses to take judicial notice of proceedings in another federal court). Here, in issue was not simply court proceedings, but contents of an official record, which can be admitted only by producing a certified copy or testimony of a witness who has compared a copy to the original. Federal Rule of Evidence (hereinafter referred to as "F.R. Ev.") 1005. Our policy is to refuse to judicially notice proceedings in any other matter, including those of our own court, unless the opposing party has been fully

apprised of same a reasonable time prior to the hearing or agrees to same, to overcome the due process issue raised in *In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir.1942); or unless the proceedings are introduced by appropriate formal evidence. In the instant case, 1st Merc. merely sought to add certain documents to the record, over the objection of the Debtors' counsel, with no indication that he had apprised the Debtors' counsel previously of his intention to offer them and no attempt to formally introduce same, per F.R.Ev. 1005. Thus, they were properly excluded.

### 5. CONCLUSION

These issues having been resolved, the determination that the Debtors' 522(f)(1) Motion follows from a straightforward application of the steps for resolving such motions set forth in *Magosin*, 75 B.R. at 547. The value of the property ($19,500.00), less the liens not to be avoided (the first mortgage of $1,500.00 and the DPW liens totalling $3,000.00), less the Debtors' exemptions of not less than $15,000.00, do not yield a positive number. The 1st Merc. lien is therefore subject to avoidance, per § 522(f)(1).

An Order granting the Debtors' § 522(f)(1) Motions and granting their Objections to 1st Merc.'s Proofs of Claim, to the extent they request that the Claims be allowed as unsecured claims,[8] shall issue.